DANIELS *v.* RAILROAD COMPANY.

Under the act of April 29, 1802 (§ 6), providing "that whenever *any question* shall occur before a Circuit Court upon which the opinions of the judges shall be opposed, *the point* upon which the disagreement shall happen shall . . . be certified . . . to the Supreme Court, and shall by the said court be finally decided"—the court will not even by con-

sent of parties take jurisdiction, unless the certificate of division present in a precise form, a point of law upon a part of the case settled and stated. Hence where the record stated certain facts, and with this statement presented the testimony of numerous witnesses which was directed to the establishment of others,—the whole case being, in fact, brought up with a purpose, apparently, that this court should decide both fact and law—and the question certified was whether in point of law upon the facts as stated and *proved* the action could be maintained, —the court dismissed the case as not within its jurisdiction.

THE sixth section of the act of Congress of 29th April, 1802,* provides:

"That whenever *any question* shall occur before a Circuit Court upon which the opinions of the judges shall be opposed, *the point* upon which the disagreement shall happen, shall, &c., be stated under the direction of the judges and certified . . . to the Supreme Court . . . and shall, by the said court, be finally decided."

With this act in force Daniels brought a suit in the Circuit Court for the Northern District of Illinois against the Rock Island Railway Company for injuries done him by a collision on its railroad; there being a special plea to one of the counts of the declaration—of which there were several, denied generally—that the collision referred to was brought about by the carelessness of the defendant's servant, and without the knowledge or consent of the defendant, and that at the time of the injury the plaintiff himself was a servant serving as a fireman on the locomotive. The record went on:

"On the trial it was proved that the defendant was a common carrier of passengers; that at the time alleged the plaintiff was on the engine of the defendant, for the purpose and *in the manner hereinafter stated*, proceeding over the road of the defendant, when by the negligence and carelessness of the engineer of the locomotive (the said engineer being at the time a servant of the defendant), upon which the plaintiff was riding, a collision took place, which resulted in great personal injury to the plaintiff.

* 2 Stat. at Large, 159.

The circumstances connected with the plaintiff's trip and the manner and purpose of his firing the engine, as well as some conversation of his after the injury, are detailed by the witnesses as follows."

Then followed the testimony of seven witnesses—two on one side, five on the other—examined and cross-examined. These witnesses testified that the plaintiff *had* been, a week previously to the accident, a fireman on the railroad, but had been—as some signified it might be—" dismissed"—though, as it rather appeared, possibly—" suspended;"—that is to say, owing to the diminished business of the road at that exact season, had been taken off the pay-list; as the company did continually with its hands on the decrease of its business at particular times in the year, and put on a list of persons who would be preferred when, with the increase of business, the company would again require more aid. " Its business was unsteady." Such persons, it was testified, were under no obligation to come back, nor was the company bound to employ them again, but it was a custom if they were at hand to set them to work again as soon as there was work. Daniels, it was testified, had been inquiring two or three days previously to the day of the accident when he should be employed again, and was told that it might be in one, two, three, or four weeks; that it would depend on the business of the road.

On the day of the accident he came to the master mechanic, within whose business it was to employ and discharge firemen, and asked, as some witnesses testified, for " a pass"—though others heard nothing about " a pass"—to go to a place called Peru to get his clothes. The master, according to his own testimony, told him that the company was going to send an extra engine down that night or the next, and that he could " fire" that engine down; though according to the testimony of another witness, the master told him that if he would fire that engine down he would give him a pass: " that was the understanding between them." The master himself swore that there was no agree-

ment that he should fire the engine in consideration of his passage on it. The company, it was sworn to, was not in the habit of making that sort of agreement, and the master mechanic had no right to make such arrangements or to give "passes." He supposed, according to his own testimony, that a sub-officer whose duty it would be, unless directed to the contrary, to put the man's name on the pay-roll when he saw him serving on the engine, would put his name on the roll accordingly.

There was other testimony, all directed to the fact whether or not the man was actually reinstated or whether he was hanging on only, expecting to be, and had now, in consideration of "firing" the engine on a particular trip, been given the privilege of a passage on it to go and get his clothes.

The record, after mentioning certain facts that were proved, thus went on:

"This was all the evidence bearing upon the case, and thereupon it occurred as a question whether, in point of law, upon the facts *as stated and proved*, the action could be maintained, and whether, consequently, the jury should be instructed that under the facts as proved the plaintiff could not recover; upon which questions the opinions of the judges were opposed. Whereupon, &c., the foregoing points upon which the disagreement has happened is ordered by the judges to be stated and certified to the Supreme Court of the United States, &c., for its final decision."

The case came here accordingly by a certificate that the opinions of the judges were opposed on the points set forth, and was argued by *Messrs. Hurd and Booth, for the plaintiff, and by Messrs. Cook and Winston, contra,* on the questions of law and fact presented;—questions, however, which this court did not consider; their opinion going to the matter of jurisdiction only.

Mr. Justice SWAYNE delivered the opinion of the court.

This case is brought before us by a certificate that the opinions of the judges of the Circuit Court below were opposed upon the points set forth; the proceeding having

been taken under the sixth section of the act of the 29th of April, 1802.

To come properly before us, the case must be within the appellate jurisdiction of this court. In order to create such jurisdiction in any case, two things must concur: the Constitution must give the capacity to take it, and an act of Congress must supply the requisite authority.*

The original jurisdiction of this court, and its power to receive appellate jurisdiction, are created and defined by the Constitution; and the legislative department of the government can enlarge neither one nor the other. But it is for Congress to determine how far, within the limits of the capacity of this court to take, appellate jurisdiction shall be given, and when conferred, it can be exercised only to the extent and in the manner prescribed by law. In these respects it is wholly the creature of legislation.†

The section referred to of the act of 1802 mentions several particulars, all of which must appear in the certificate. They are jurisdictional, and a defect as to either is fatal.

The one which has most frequently been the subject of discussion, and which it is necessary to consider in this case, is "the point upon which the disagreement of the judges" occurs.

It must be a question of law, and not of fact.‡

It must arise in the progress of the cause, and not incidentally, or in relation to a collateral matter, after the rendition of the judgment or decree. Where the question certified was as to the amount of the bond to be given upon the allowance of a writ of error, and where it was as to the retaxation of costs after the principal of the judgment had been collected, this court held that it could not take jurisdiction.§

---

* Marbury *v.* Madison, 1 Cranch, 137; Sheldon *v.* Sill, 8 Howard, 448.

† Durousseau *v.* United States, 6 Cranch, 314; United States *v.* Moore, 3 Id. 159; Barry *v.* Mercein, 5 Howard, 119.

‡ Dennistoun *v.* Stewart, 18 Id. 565.

§ Devereaux *v.* Marr, 12 Wheaton, 213; Bank United States *v.* Green, 6 Peters, 26.

It cannot arise upon a motion for a new trial, the decision resting in the discretion of the court, and not being subject to exception.*

It may arise upon a special verdict, or a motion in arrest of judgment.†

The question, whether a demurrer shall be sustained? is not sufficiently definite.  The precise legal point involved, upon which the judges were divided in opinion, should be stated.  The court is not bound to look beyond the certificate to ascertain the point.‡

Nothing which may be *decided* according to the discretion of the court can be made the subject of examination here in this way.§

But if in connection with the discretion which the court below is asked to exercise, questions are presented which involve the right of the matter in controversy, this court will entertain them.‖

Except under peculiar circumstances, this court will not take cognizance of a question certified upon a division *pro formâ.*¶

The determination of the questions certified does not affect the right to bring up the whole case, by a writ of error or appeal, after it is terminated in the court below.** When a certificate of division is brought into this court, only the points certified are before us.  The cause remains in the Circuit Court, and may be proceeded in by that court according to its discretion.††

Where the question certified was, whether a letter written by a cashier without the knowledge of the directors was

---

* United States *v.* Daniel, 6 Wheaton, 545.

† Somerville Executors *v.* Hamilton, 4 Id. 230; United States *v.* Kelly, 11 Id. 417.

‡ United States *v.* Briggs, 5 Howard, 208.

§ Davis *v.* Braden, 10 Peters, 288.

‖ United States *v.* The City of Chicago, 7 Howard, 185.

¶ Webster *v.* Howard, 1 Id. 54; United States *v.* Stone, 14 Peters, 524.

** Ogle *v.* Lee, 2 Cranch, 33; United States *v.* Bailey, 9 Peters, 273.

†† Kennedy et al. *v.* The Bank of the State of Georgia, 8 Howard, 610.

binding on the bank, this court declined to answer, because the solution of the question depended in part upon facts not stated in the certificate.*

The *whole case* cannot be transferred to this court. Chief Justice Marshall says:† " A construction which would authorize such transfer, would counteract the policy which forbids writs of error or appeal until the judgment or decree be final. If an interlocutory judgment or decree could be brought into this court, the same case might again be brought up after a final decision; and all the delays and expense incident to a repeated revision of the same cause be incurred. So if the whole cause, instead of an insulated point, could be adjourned, the judgment or decree which would be finally given by the Circuit Court might be brought up by writ of error or appeal, and the whole subject be re-examined. Congress did not intend to expose suitors to this inconvenience; and the language of the provision does not, we think, admit of this construction. A division on a point, in the progress of a cause, on which the judges may be divided in opinion, not the whole cause, is to be certified to this court."

Where it appears the whole case has been divided into points—some of which may never arise, if those which precede them in the certificate are decided in a particular way—the case will be dismissed for want of jurisdiction.‡

The questions must be separate and distinct, and each one must be particularly stated with reference to that part of the case upon which it arose. They must not be " such as involve or imply conclusions or judgment by the judges upon the weight or effect of the testimony or facts adduced in the cause."§

The question must not be general nor abstract, nor a mixed one of law and fact. If it be either, this court cannot take jurisdiction.‖

---

* United States *v.* The City Bank of Columbus, 19 Howard, 384.

† United States *v.* Bailey, 9 Peters, 278.

‡ Nesmith et al. *v.* Sheldon et al. 6 Id. 41.

§ Dennistoun *v* Stewart, Id. 18, 565.

‖ Ogilvie et al. *v.* The Knox Insurance Company, Id. 577

In the case before us the questions certified are, "whether, in point of law, upon the facts as stated and proved, the action could be maintained; and whether, consequently, the jury should be instructed that, under the facts as proved, the plaintiff could not recover?"

Upon looking into the record, we find a body of facts stated as having been proved, and the testimony of numerous witnesses set forth at length, as respectively given. The entire case is brought before us, as if we were called upon to discharge the twofold functions of a court and jury. At the threshold arises an important question of fact, not without difficulty. It is, whether the plaintiff is to be regarded as a passenger, or a servant of the defendant, at the time he received, upon the locomotive, the injury for which he sues? Upon the determination of this question depend the legal principles to be applied. They must be very different, as the solution may be one way or the other.

The Constitution wisely places the trial of such questions within the province of a jury, and it cannot be taken from them without the consent of both parties. Here, such consent is given; but it is ineffectual to clothe us with a power not conferred by law. In the light of the authorities to which we have referred, it is sufficient to add that the questions certified are not such that we can consider them.

According to the settled practice, the case will, therefore, be dismissed for want of jurisdiction, and remanded to the Circuit Court, with an order to proceed in it according to law.

DISMISSED, AND ORDER ACCORDINGLY.

[See *infra*, p. 294, *Havemeyer* v. *Iowa County*, 2.—REP.]