PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILROAD CO. *v.* HOFFMAN.

[No. 12,633. Filed July 12, 1928.]

*G. E. Ross,* for appellant.

*Oren W. Dickey, Alfred Hogston* and *V. Ed Funk,* for appellee.

WILLOUGHBY, J.—The appellee recovered a judgment against the appellant in an action for personal injuries. The complaint was in two paragraphs, each charging the appellant with actionable negligence. These paragraphs of complaint were answered by a verified general denial to each of said paragraphs. The issue thus formed was tried by a jury, resulting in a verdict against the appellant and in favor of appellee, and assessing her damages at the sum of $4,500, upon which verdict the court rendered judgment in favor of appellee and against the appellant for said amount. From such judgment, this appeal is being prosecuted. On appeal, the Appellate Court affirmed the judgment of the court below.

The appellant has filed what it styles an "application for a writ of error, transfer and assignment of errors." This petition, if considered a petition to transfer to the Supreme Court under §1357 Burns 1926, is not sufficient. A petition to transfer a cause from the Appellate Court to the Supreme Court must allege facts necessary to bring it within the statutory provisions without the necessity of the Supreme Court examining the record to determine such facts, in view of this section and §1356 Burns 1926. *In re Aurora Gaslight Co.* (1917), 186 Ind. 690, 115 N. E. 673. The petition does not allege such necessary facts and, therefore, presents no question for the determination of this court under the statute. The petition presented is simply a petition for a writ of error. The appellant has ignored the Appellate Court and the act requiring the transfer of causes from said Appellate Court to this court in certain cases provided for in the statute, §1357, *supra.*

An act to create an Appellate Court and defining its jurisdiction and procedure and declaring an emergency, approved February 28, 1891, Acts 1891 p. 39, was passed

by the legislature of 1891. Section 26 of that act provided that:

"The period of existence of said Appellate Court shall be six years from the first day of March, 1891, and no longer, at the end of which time the Supreme Court shall assume jurisdiction of all cases pending in said Appellate Court as if this act had never been passed."

This Act was amended by an act approved January 28, 1897, Acts 1897 p. 10. The amendment is as follows:

"Section 1. That section 26 of an act entitled an act to create an Appellate Court and defining its jurisdiction and procedure and declaring an emergency, approved February 28, 1891, be and the same is hereby repealed. Section 2. That the terms of office of each of the judges of said Appellate Court shall be four years from the first day of January next after his election; and that all of the present judges of said court shall continue to hold their offices as such, respectively, for the districts for which they have been elected, for and during the term of four years from the first day of January, 1897. Section 3. The period of the existence of said Appellate Court shall be four years from the first day of January, 1897, and no longer, at the end of which time the Supreme Court shall assume jurisdiction of all causes pending in and other business of said Appellate Court as if this act had never been passed." Section 4 is an emergency clause.

This act of 1897 was amended by an act approved February 7, 1899. See Acts 1899 p. 24. The amendment of 1899 is as follows:

"Section 1. That section 3 of an act entitled 'an act to repeal section 26 of an act entitled an act to create an Appellate Court and define its jurisdiction and procedure and declaring an emergency,' approved February 28, 1891; and to prescribe the terms of office of the judges of said court, and de-

claring an emergency, and providing that at the expiration of the time for which the court is extended the business then undisposed of by the court shall be transferred to the Supreme Court, approved January 28, 1897, be and the same is hereby amended to read as follows:   Section 3. The period of the existence of said Appellate Court shall be six years from the first day of March, 1897, and no longer, at the end of which time the Supreme Court shall assume jurisdiction of all causes pending in and other business of said Appellate Court as if this act had never been passed.   Section 2.   The first election of the five judges of said court after that in November, 1898, shall be at the general election on the first Tuesday after the first Monday in November, 1902, and the succeeding elections of said five judges shall be every four years thereafter, and the judges elected at such elections shall qualify as now provided by law and shall enter upon their terms of office on the first day of January next after their election.   Section 3.   All laws and parts of laws in conflict with the provisions of this act are hereby repealed." · Section 4 is an emergency clause.

An act approved March 12, 1901, and entitled "An act concerning appeals, increasing the number of judges of the Appellate Court, providing that the same shall sit in two divisions, defining their jurisdiction and the jurisdiction of the Supreme Court, repealing former laws, and declaring an emergency," does not purport to amend any other act and provides that, except as otherwise declared, the jurisdiction of the Supreme Court and the procedure therein shall be as is now provided by law. Acts 1901 p. 565.   In §2 of said act, it provides that the Appellate Court shall be composed of six instead of five judges as now provided by law.   Said court, for the hearing and decision of causes, shall sit in two divisions, which shall be designated as the Appellate court of Indiana, Divisions Number One and Two respectively.

Section 3 enumerates the counties composing each division. Section 4 provides that the judges resident in the first district shall constitute Appellate Court Division Number One and the judges resident in the second district shall constitute Appellate Court Division Number Two. The judges shall be and remain residents of the districts from which they are elected or appointed. Section 9 of said act provides that no appealable case shall hereafter be taken directly to the Supreme Court unless it be within one of the following classes. The classes are then enumerated in such section. Section 10 provides for the transfer of cases to the Supreme Court. Section 13 provides that if any case is erroneously appealed to the wrong court, that court shall make an order for its transfer to the proper court and the appeal shall stand as if originally filed in the right court. Section 14 provides for the election of Appellate Court judges. Section 15 provides for the manner in which appeals shall be taken to the Appellate Court. Section 19 is as follows;

"Section one of an act entitled 'An act to amend section 3 of an act entitled "an act to repeal section twenty-six of an act entitled an act to create an Appellate Court and define its jurisdiction and procedure, and declaring an emergency," approved February 28, 1891; and to prescribe the terms of office of the judges of said court, and declaring an emergency and providing that at the expiration of the time for which the court is extended, the business then undisposed of by the court shall be transferred to the Supreme Court,' approved January 28, 1897, and fixing the time of electing the judges of said Appellate Court, and repealing all laws in conflict therewith, and declaring an emergency, approved February 7, 1899, is hereby repealed."

Section 20 of this act is as follows:

"Nothing in this act shall be construed to repeal that part of the act approved February 28, 1891, and amendments thereto, which created the Appel-

late Court of Indiana; but this act shall be held and construed to be supplemental to the parts of said act and the amendments thereto which are not by this act repealed. And the judges of the Appellate Court now elected shall be judges of said court from the districts in which they reside and shall hold their office for the term for which they were elected the same as if this act were not passed."

Section 21 is as follows: "All laws and parts of laws inconsistent with this act are hereby repealed." Section 22 is an emergency clause.

The appellant claims that all acts attempting to change or supplement or to amend said act of February 28, 1891, are null and void, because they are in violation of the Constitution of the State of Indiana. The appellant in this case contends that the act of February 28, 1891, and each and every act since that time attempting to change, amend, add to or take from, or to enact the same, are each and all null and void for the reason that they are each and all enacted to create a court and give it a power to do the things which, under the Constitution, are vested exclusively and irrevocably in this, the Supreme Court, namely, the duty, right and power to finally consider, determine and adjudge the law as to be applied and administered within the limits of this state.

The appellant in this case has applied for a writ of error and asked that the record be certified and docketed in this, the Supreme Court of Indiana, and that the judgment appealed from be in all things reversed.

The appellee contends that the Appellate Court is still in existence and was created for six years and that an act becoming effective January 28, 1897, extended the existence of the court from January 1, 1897, to January 1, 1901. Acts 1897 p. 10. And an act approved February 7, 1899, amended the act of 1897, to read six years from March 1, 1897, or to March 1, 1903, and expressly repealed all laws in conflict. Acts 1899 p. 24.

The act of 1901 (p. 565) provides that the part of the act of 1891 creating the court is not repealed and the same act also provides that all laws and parts of laws inconsistent with this act are hereby repealed, and providing for the election of six Appellate Court judges at the election in 1902, whose terms were for four years and repealing all laws in conflict therewith, carried the existence of the Appellate Court past March 1, 1903, the date in the amendment of 1899 when the court should cease to exist, and continued the court indefinitely. "The act of 1901 expressly repealed all provisions of former acts limiting the existence of the Appellate Court and thereby the life of that tribunal was continued indefinitely, at least until abolished by the legislature." *Ex parte France* (1911), 176 Ind. 72, 87.

The act creating the Appellate Court and the amendments thereto, as they now stand, are not unconstitutional. In discussing the act of March 3, 1911, which this court held to be unconstitutional. *Ex parte France, supra,* this court said:

"Under the circumstances §5 of the act in question, which professes to repeal all laws or parts of laws in conflict, and also §10 of the act of 1901, must be held to be ineffectual and of no avail, and the act concerning appeals, increasing the number of judges of the Appellate court approved March 12, 1901, as amended by the act of 1907, remains in full force and effect in all its parts."

In so far as the rights of litigants are concerned, the Constitution of Indiana, does not give the right of appeal. *Amacher* v. *Johnson* (1910), 174 Ind. 249, 91 N. E. 928. In some cases the statutes provide that the judgment of the circuit court shall be final. §1353 Burns 1926 (1389). There is no right of appeal from the decision of the State Tax Commissioners on the issuing of bonds by a municipality.

§14240 Burns 1926. One of the necessary incidents when a court is established is to define its jurisdiction. When the Constitution gave the legislature the right to establish such other courts as it may see fit to establish, it necessarily gave the legislature the right to define the jurisdiction for the purpose of determining the rights of litigants. It certainly had the right to say that the decision of the Appellate Court is final in determining those rights, subject to the right given the Supreme Court to control the legal declarations if the decision of a circuit court or a tax board is final under the statutes cited above. See *In re Aurora Gaslight Co., supra; Barnett* v. *Bryce Furnace Co.* (1901), 157 Ind. 572, 62 N. E. 6; *Julian* v. *Bliss* (1925), 196 Ind. 68, 147 N. E. 148; *Board, etc.,* v. *Smith* (1872), 40 Ind. 61; *Moffit* v. *State, ex rel.* (1872), 40 Ind. 217. Appellant relies upon *Ex parte France, supra,* and *Curless* v. *Watson* (1913), 180 Ind. 86, 102 N. E. 497, in support of its contention that the power to finally determine all appeals on their merits is given by the Constitution to the Supreme Court alone. Neither of these cases so decides, but they do uphold the power of the Supreme Court to finally declare legal principles. They do not hold that the Appellate Court is unconstitutional or that it has no power to finally determine the controversy between litigants, subject to the power given the Supreme Court to control the declaration of legal principles.

In *Barnett* v. *Bryce Furnace Co., supra,* the court held that under subd. 2 of §10 of the act of March 12, 1901, concerning appeals, the losing party in the Appellate Court may have his cause transferred to the Supreme Court, when the opinion contravenes a ruling precedent, or involves an erroneous decision of a new question, but a transfer will not be granted on the ground that the Appellate Court has misapprehended or misstated the

facts as disclosed by the record. In that case, the court said:

"The plain purpose of the subdivision in question was not to give this court jurisdiction to determine whether the facts in cases which are not appealable here as a matter of right have been correctly understood and stated by the Appellate Court, but to authorize this court to control the declaration of legal principles."

In *Curless* v. *Watson, supra,* the court said:

"At the 1913 session of the General Assembly, an act was passed purporting, among other things, to repeal §10 of the act of 1901, *supra.* Acts 1913 p. 454. This act went into effect March 10, 1913. Appellant contends that the act of 1913, in so far as it purports to repeal the transfer act, is unconstitutional and void. This cause presents to this court two principal propositions. (1) Is the act of 1913 within the power of the legislature to enact? (2) Is the legislature authorized to create a court with power over appeals from inferior courts, such as is, by the Constitution, lodged in the Supreme Court? Many briefs have been filed in this cause by appellants, appellee and friend of the court, in which the right of appeal, the jurisdiction of the Supreme Court in appeals, the right to appeal from the Appellate Court to this court, and the constitutional authority of the legislature to limit, by regulations and restrictions, the right to appeal, are discussed.

"The Constitution of this State declares that 'The judicial power of the State shall be vested in a Supreme Court, in circuit courts, and such other courts as the general assembly may establish.' §1, Art. 7, Constitution of Indiana (as amended March 14, 1881). 'The Supreme Court shall consist of not less than three, nor more than five judges.' §2, Art. 7. 'The Supreme Court shall have jurisdiction co-extensive with the limits of the state in appeals and writs of error, under such regulations

and restrictions as may be prescribed by law. It shall also have such original jurisdiction as the general assembly may confer.' §4, Art. 7, Constitution of Indiana.

"It is a well-settled principle of law that appeal is a matter of legislative discretion under that provision of §4, *supra*, which provides that the legislature may regulate and restrict appeals, and has been so decided many times, by this court and the courts of other states, having similar provisions in their constitutions. The Constitution of this State does not grant to any one the right to an appeal to this court, or any other court. *Amacher* v. *Johnson* (1910), 174 Ind. 249, 253, 91 N. E. 928, and cases cited; *Sullivan* v. *Haug* (1890), 82 Mich. 548, 46 N. W. 795, 10 L. R. A. 263; *Lake Erie, etc., R. Co.* v. *Watkins* (1902), 157 Ind. 600, 605, 62 N. E. 443, and cases cited; *Randolph* v. *City of Indianapolis* (1909), 172 Ind. 510, 88 N. E. 949; *Barnes* v. *Wagener* (1907), 169 Ind. 511, 82 N. E. 1037; *Brown* v. *Brown* (1907), 168 Ind. 654, 80 N. E. 535; *Evansville, etc., R. Co.* v. *City of Terre Haute* (1903), 161 Ind. 26, 67 N. E. 686; *Kepler* v. *Rinehart* (1904), 162 Ind. 504, 70 N. E. 806; *Board, etc.,* v. *Albright* (1907), 168 Ind. 564, 81 N. E. 578; *Hughes* v. *Parker* (1897), 148 Ind. 692, 48 N. E. 243; *Newman* v. *Gates* (1898), 150 Ind. 59, 49 N. E. 826; *Sims* v. *Hines* (1890), 121 Ind. 534, 23 N. E. 515; *Rupert* v. *Martz* (1888), 116 Ind. 72, 18 N. E. 381; *Branson* v. *Studabaker* (1892), 133 Ind. 147, 33 N. E. 98; *Board, etc.,* v. *Davis* (1894), 136 Ind. 503, 36 N. E. 141, 22 L. R. A. 515; *Ex parte Sweeney* (1891), 126 Ind. 583, 27 N. E. 127; *Brown* v. *Porter* (1871), 37 Ind. 206; *State* v. *Vierling* (1870), 33 Ind. 99; *Board, etc.,* v. *Lease* (1864), 22 Ind. 261; *Board, etc.,* v. *Brown* (1860), 14 Ind. 191, 193; *Hornberger* v. *State* (1854), 5 Ind. 300; *Clarke* v. *Bazadone* (1803), 1 Cranch *212, 2 L. Ed. 85, 95; *Durousseau* v. *United States* (1810), 6 Cranch *307, 3 L. Ed. 232; *Daniels* v. *Rock Island R. Co.* (1865), 3 Wall. 250, 18 L. Ed. 224; *Ex parte McCardle* (1869), 7 Wall. 506, 19 L. Ed. 264."

The right to a new trial or to an appeal to this court or any other court depends upon the provisions of the statutes, and a new trial can be granted or an appeal taken only when authorized by statute, and then only in the manner, upon the conditions, and for the reasons named in the statute. *Amacher* v. *Johnson, supra;* Elliott, App. Proc. §§75, 76 and 77; *State* v. *Rockwood* (1902), 159 Ind. 94, 64 N. E. 592.

Appellant says: "Courts possess inherent powers independent of legislative enactment, and the Supreme Court has jurisdiction of a writ of error or a writ of *coram nobis*, neither of which is abrogated by statute. *Sanders* v. *State* (1882), 85 Ind. 318, 44 Am. Rep. 29." And that the Supreme Court has inherent power to reverse a judgment by writ of error for error of law, again citing *Sanders* v. *State* (1882), 85 Ind. 318, 44 Am. Rep. 29. In *Sanders* v. *State, supra,* the court says:

> "It is our opinion that the courts have the power to issue writs in the nature of the writ *coram nobis*, but that the writ can not be so comprehensive as at common law, for remedies are given by our statute which did not exist at common law—the motion for a new trial and the right of appeal—and these very materially abridge the office and functions of the old writ. These afford an accused ample opportunity to present for review questions of fact, arising upon or prior to the trial, as well as questions of law; while at common law the writ of error allowed him to present to the appellate court only questions of law. Under our system all matters of fact reviewable by appeal, or upon motion, must be presented by motion for a new trial, and can not be made the grounds of an application for a writ of *coram nobis*."

*Sanders* v. *State, supra,* does not support appellant's contention, but is in line with the law as declared in *Curless* v. *Watson, supra.*

In *City of Indianapolis* v. *Hawkins* (1913), 180 Ind. 382, 103 N. E. 10, it is held that an appeal is an exclusive method of presenting a cause to an appellate tribunal in all cases in which an appeal may be had. See, also, Elliott, App. Proc. §75.

In Art. 7, §4, of our Constitution, the Supreme Court was given jurisdiction over appeals and writs of error. "Writs of error" had a definite meaning then, and ██ has yet, viz., "A writ authorizing an appeal from an inferior court, assigning error in the proceedings as relating only to matters of law, arising upon the face of the proceedings, so that no evidence is required to substantiate or support it." The Constitution authorizes the legislature to make such regulations and restrictions as it might see fit, Art. 7, §4, *supra*. This the legislature has done from time to time by providing rules as to the transfer of cases from other courts to the Supreme Court, and this takes the place of the Constitutional "appeals" and "writs of error." The question presented to the court in this case is, Has the writ of error been abolished in this state? This question cannot be important for the reason that our statutory appeal takes its place, and makes full provisions for the transfer of cases to this court, in every case which the legislature has thought proper to be reviewed on appeal. It makes no difference in what manner a case may be transferred for review, so long as the legislature, under its power to regulate and restrict "appeals" and "writs of error," has made some provision. The real question is, not how appeals may reach a higher court, but, what court, or what tribunal shall have final jurisdiction in appeals and writs of error? It is well settled that where the power to issue writs has been fixed by the Constitution in a certain tribunal, the legislature cannot divest that tribunal of that power. *Curless* v. *Watson*, *supra*.

In *Lake Erie, etc., R. Co.* v. *Watkins* (1902), 157 Ind. 600, the court used the following language:

"That a party to a suit or action has no vested right to appeal or prosecute a writ of error from one court to another, in the absence of constitutional protection in that respect, is a well settled proposition. Neither by instituting nor by defending an action or a suit does a party thereby acquire a vested right to a decision from a particular court or tribunal. This doctrine, so universally asserted and supported by the authorities, is but an affirmation or extension of the familiar principle that there is no vested right in a remedy."

In *Sullivan* v. *Haug* (1890), 82 Mich. 548, the court said:

"The right to an appeal is and always has been statutory, and does not exist at common law. It is a remedy which the legislature may in its discretion grant or take away, and it may prescribe in what cases, and under what circumstances, and from what courts, appeals may be taken; and unless the statute expressly or by plain implication provides for an appeal from a judgment of a court of inferior jurisdiction, none can be taken."

An examination of Art. 7, §4, discloses that it does not define or mention the class of cases in which the Supreme Court shall have appellate jurisdiction. It is therein declared that this court shall have such jurisdiction under such regulations and restrictions as may be prescribed by law. While it is certainly true that the legislature under this provision of our fundamental law is not authorized to deprive the Supreme Court entirely of its appellate jurisdiction, still the legislature may not only from time to time enlarge such jurisdiction, but it may also contract the same as public policy may demand or require. It may designate the amount that may authorize an appeal, and, within

reasonable limits, it may prescribe the class of cases in which appeals can be taken, and from what courts or tribunals they may be prosecuted. The policy of the framers of our Constitution seems to have been not to prescribe absolutely the boundaries or limits of the jurisdiction of our courts, but to allow a legislative discretion in that respect in order that the varying demands and changing necessities of the people might be satisfied. See *Branson* v. *Studabaker* (1892), 133 Ind. 147, 33 N. E. 98, and cases there cited.

In *Ex parte France, supra,* Jordan, J., speaking for the court in the prevailing opinion, said:

"The statute of 1901, *supra,* as amended by the act of 1907, *supra,* appeared to be satisfactory to both the bar and the bench of this State, and remained in full force and effect at the time the act of 1911 (Acts 1911 p. 201) was passed. In view of the decisions of the Supreme Court, declaring the purpose for which the transfer provision in that act was inserted, we are unable to conjecture what cause prompted the legislature of 1911 to change the act of 1901, by declaring that the decisions of the Appellate Court shall be final, and by repealing §1337j," being §1394 Burns 1914.

In concluding his opinion, on page 97 of said report, he says:

"Without further comment, we conclude and so hold, for the reasons herein given, that the act of the legislature approved March 3, 1911, here involved, is violative of and antagonistic to the Constitution of this State, and therefore invalid in all its parts except §3. Under the circumstances, §5 of the act in question, which professes to repeal all laws or parts of laws in conflict, and also §10 of the act of 1901, must be held to be ineffectual and of no avail, and the act concerning appeals, increasing the number of judges of the Appellate Court, approved March 12, 1901, as amended by the act of 1907,

remains in full force and effect in all its parts. As §3 of the act of 1911 is not dependent on any of the invalid provisions of that act, it can stand, and the clerk of this court will be controlled thereby. It follows, and we so direct and order, that the petitioner, the clerk of this court, must disregard the act of 1911, with the exception of §3, and must be controlled by the act of 1901, *supra*, as amended in 1907, *supra*, which still stands and remains in full force and effect as it did at the time of the passage of the act of 1911, *supra*."

The act of 1901, with the amendments thereto, has been construed in the cases of *Ex parte France, supra,* and *Curless* v. *Watson, supra,* and many other cases in this court, and has been upheld, except the amendments of 1911 and 1913, in every case considered, and it has been acquiesced in for more than twenty-five years by all departments of our government, including this court, and by the entire bar and people of the state; when the results of overturning such construction would work such injustice, hardship and confusion, as even a constitutional amendment could not remedy, it would be the duty of this court to refrain from its overthrow. *Moore-Mansfield, etc., Co.* v. *Indianapolis, etc., R. Co.* (1913), 179 Ind. 356, 101 N. E. 296; *Fall* v. *Hazelrigg* (1874), 45 Ind. 576, 15 Am. Rep. 278; *Rogers* v. *Goodwin* (1807), 2 Mass. 475; *Martin* v. *Hunter* (1816), 1 Wheat. (U. S.) 304, 350.

In *Rogers* v. *Goodwin, supra,* the court said:

"By a law of the colony of Massachusetts, passed as early as the year 1636, authority was given to the freemen of every town to dispose of their lands. In the preamble to a statute passed in 1753, it is recited that the proprietors of lands lying in common, have power 'to manage, *dispose* and divide the same, in such way and manner as hath been or shall be concluded and agreed on by the major part of the

interested.' Of these statutes a practical construction early and generally obtained that in the power to *dispose* of lands, was included a power to sell and convey the common lands. Large and valuable estates are held in various parts of the commonwealth, the titles to which depend on this construction. Were the court now to decide that this construction is not to be supported, very great mischief would follow. And although, if it were now *res integra*, it might be very difficult to maintain such a construction, yet at this day the *argumentum ab inconvenienti* applies with great weight. We cannot shake a principle which in practice has so long and so extensively prevailed. If the practice originated in error, yet the error is now so common that it must have the force of the law. The legal ground, on which this provision is now supported, is that long and continued usage furnishes a contemporaneous construction, which must prevail over the mere technical import of the words."

See, also, *Pennsylvania Co.* v. *State* (1895), 142 Ind. 428, 41 N. E. 937; *State* v. *Indiana, etc., R. Co.* (1892), 133 Ind. 69, 32 N. E. 817; Cooley, Const. Lim. (7th ed.) 84-102.

Our statutory appeal gives all the relief granted by the common-law writ of error and the original proceeding by appeal introduced into equity practice from the civil law. 2 Cyc 511-517.

The legislature of 1852, 2 R. S. 1852 p. 27, 2 G. & H. p. 33, abolished the distinction between actions at law and suits in equity and, at the same time, abolished the writs of error in both civil and criminal cases and provided for appeals in all appealable cases where a judicial decision is sought to be brought before the court of last resort for review. In *Hornberger* v. *State* (1854), 5 Ind. 300, a criminal case, the court said:

"At common law there were some defects which might be taken advantage of, either by motion to quash, or by motion in arrest, or upon error. But

now the writ of error has been abolished.   2 R. S. 158; Id. 381.   The motion to quash, motion for a new trial, and motion in arrest of judgment yet remain curtailed and modified by statute.   2 R. S. 1852, *supra*."

In *Montgomery* v. *Jones* (1854), 5 Ind. 526, a civil case, it is held that in this state an appeal stands in the place of a writ of error, citing R. S. 1852.

Appellant in this case suggests that under Art. 7, §4, of the Constitution of this state, the legislature could not abolish the writ of error.   The statutes abolishing writs of error have been acquiesced in and followed by this court for more than seventy years and, during that time, no other method of review has been known to our law except by appeal.   It requires no argument to convince any one that the construction put on the act of 1852 by this court in *Montgomery* v. *Jones*, *supra*, should not be overthrown.   Writs of error have not been restored by the legislature, but it has provided for the review of cases by the Supreme and Appellate Courts and provided for the transfer of cases from other courts to the Supreme Court.   We conclude that under Art. 7, §1, of the Constitution of Indiana, as amended March 14, 1881, the legislature was given power to create the Appellate Court, and that the act approved March 12, 1901, concerning appeals and increasing the number of judges of the Appellate Court, as amended by subsequent acts, except the act of 1911 and the act of 1913, each of which was held to be unconstitutional by this court, except §3 of the act of 1911, is a valid act and in full force and effect at this time, and that, under Art. 7, §4, of the Constitution of Indiana, the legislature has abolished the writ of error and provided that the only method in which the proceedings of a trial court can be reviewed is by appeal as provided by statute.   The petition is denied.

Martin, J., concurs in the conclusion.