Rocky CAMPBELL, Jesse Parker, Carolyn Willis, and Marilyn Johnson, Appellants–Petitioners,

v.

CRITERION GROUP, El Dee Apartments, and Criterion Construction, Appellees–Respondents.

No. 29A02–9103–CV–140.

Court of Appeals of Indiana, Second District.

March 12, 1992.

Alan K. Mills, Lester H. Cohen, Barnes & Thornburg, Indianapolis, for appellants-petitioners.

Michael E. Simmons, Randall C. Helmen, Hume, Smith, Geddes & Green, Dean T. Barnard, Klineman, Rose, Wolf & Wallack, Indianapolis, for appellees-respondents.

BAKER, Judge.

## ORDER

Today we must decide whether an indigent civil appellant is entitled to a record of proceedings prepared without cost to the indigent. We answer this question affirmatively.

## BACKGROUND

This appeal comes to us from the Hamilton Circuit Court. Plaintiffs-appellants Rocky Campbell, Jesse Parker, Carolyn Willis, and Marilyn Johnson (collectively, Campbell) have petitioned this court to review the trial court's denial of their Motion for Leave to Proceed on Appeal *In Forma Pauperis* and for Preparation of the Record for Appeal at Public Expense.

Campbell's amended complaint alleges that on August 29, 1986, a fire broke out at the El Dee apartments, where he was a resident, and that defendant-appellee Criterion Group, Campbell's landlord, acted negligently with respect to Campbell's undamaged property, resulting in its loss. *Record*[1] at 159. Summary judgment was entered against Campbell, who then moved to proceed on appeal *in forma pauperis.* Although Criterion did not dispute Campbell's status as indigent, the trial court denied Campbell's motion to proceed *in forma pauperis.*[2] From this denial, Campbell appeals.[3]

1. We possess a record for this appeal because Campbell's counsel, acting *pro bono,* advanced $250 for its compilation; we address the issue posed because of its significant public interest.

2. There is no question Campbell is indigent. He is unemployed due to physical disability, has no bank accounts, owns no real estate, and has but few items of personal property. His only source of income appears to be food stamps. Jesse Parker, Carolyn Willis, and Marilyn Johnson are similarly situated.

3. Campbell has followed the correct procedural route to appeal the trial court's denial of his *in forma pauperis* petition. Indiana law requires indigency petitions to precede other appellate pleadings. *Offutt v. Sheehan* (1976), 168 Ind. App. 491, 344 N.E.2d 92. In *Offutt,* this court

## DISCUSSION

"[There] can be no equal justice where the kind of trial a man gets depends on the amount of money he has." So wrote Justice Black in the seminal case of *Griffin v. Illinois* (1956), 351 U.S. 12, 19, 76 S.Ct. 585, 591, 100 L.Ed. 891, which held that a state must provide trial transcripts prepared at public expense to its indigent criminal appellants when the state provided for an appeal as of right and required the appellant to provide a record to the reviewing court.

Indiana has long subscribed to the spirit and wisdom of this well-known principle. Over a century before *Griffin* was written, our Indiana supreme court addressed the issue of whether an indigent criminal appellant was entitled to a transcript prepared without cost to the appellant, and, if so, whether the court reporter required to prepare it was unconstitutionally denied just compensation. In ordering the court reporter to prepare a transcript for the indigent appellant, the court stated:

In arriving at our conclusions, we have felt constrained to give a liberal construction to our statutes in favor of the pauper, for we can scarcely conceive of a system of laws so inhuman and cruel that would consign the destitute and friendless to conviction and infamy, without affording full and ample means for investigation. Such a system would, in many cases, make poverty equivalent to crime; for without the means of procuring writs, witnesses and records, the in-

opined an appellant may proceed *in forma pauperis* in either of two ways. One alternative is to request indigency status in the trial court, and, if denied, appeal the denial; the other is to petition the court of appeals directly. In either case, however, the correct procedure is to file the petition itself or the petition seeking review of the denial first, before filing any other pleadings. This requirement was adopted to allow the appellate court to retain control over the waiver of fees, enabling it to grant a waiver of costs only when appropriate.

Here, Rocky Campbell raised the issue of his indigency correctly. He moved the trial court to allow him to proceed on appeal *in forma pauperis,* a motion which was denied. He then timely filed a petition in this court seeking review of the trial court's denial of his motion.

nocent might, and frequently would be convicted; and that part of our constitution which provides that 'justice shall be administered freely, and without purchase, completely and without denial,' would be an empty boast, and worse than mockery to the poor.

*Falkenburgh v. Jones* (1854), 5 Ind. 296, 299.

The conscientious concern for Indiana's poor prompted Justice DeBruler to remark that "[f]rom the date of its admission to the Union down to this day, Indiana has been a leader in providing indigent persons with free access to her courts and in providing them with fair treatment while in court." *Thompson v. Thompson* (1972), 259 Ind. 266, 273, 286 N.E.2d 657, 661. In *Thompson,* our supreme court held that IND.CODE 33-1-9-2, which authorized the exemption of certain court costs for indigent civil litigants, included the cost of publishing a summons. IND.CODE 33-1-9-2 has since been replaced by IND.CODE 33-19-3-2, which reads as follows:

A person entitled to bring a civil action or to petition for the appointment of a guardian under IC 29-3-5 may do so without paying the required fees or other court costs upon filing in court, under oath and in writing, a statement:

(1) declaring that the person is unable to make payments or to give security for them because of the person's indigency;

(2) declaring that the person believes that the person is entitled to the redress sought in the action; and

(3) setting forth briefly the nature of the action.

This statute "intended to exempt a class of persons from paying court costs and other necessary expenses of litigation, which they are unable to pay because of their poverty." *Id.* at 662.

■ *Falkenburgh* and *Thompson* are but a sampling of the care Indiana has provided its poor citizens in the courtroom. Also illustrative is IND.CODE 34-1-1-3, which provides both civil and criminal indigents [4] with cost-free service of attorneys and "other officers":

Any poor person not having sufficient means to prosecute or defend an action may apply to the court in which the action is intended to be brought, or is pending, for leave to prosecute or defend as a poor person. The court, if satisfied that such person has not sufficient means to prosecute or defend the action, shall admit the applicant to prosecute or defend the cause, and shall assign him an attorney to defend or prosecute the cause, and all other officers requisite for the prosecution or defense, who shall do their duty therein without taking any fee or reward therefor from such poor person.

IND.CODE 33-1-4-1 codifies the principles of *Falkenburgh* and *Griffin,* and authorizes the preparation of a "longhand manuscript or transcript of the evidence" without cost to the criminal appellant.[5] *See also* IND.CODE 33-1-7-5. Moreover, trial courts have discretion to expend public funds on behalf of indigent litigants for purposes of hiring expert witnesses, investigators, and secretaries, among others. *Spranger v. State* (1986), Ind., 498 N.E.2d 931, *cert. denied,* 481 U.S. 1033, 107 S.Ct. 1965, 95 L.Ed.2d 536.

■ Surprisingly, however, despite the convictions expressed by Judge Hovey in *Falkenburgh* and by Justice DeBruler in *Thompson,* no Indiana case or statute has yet been construed to authorize the prepa-

---

4. E.g. *Bradford v. State* (1990), Ind.App., 550 N.E.2d 1353 (adult probation revocation); *Matter of Laney* (1986), Ind.App., 489 N.E.2d 551 (termination of parental rights); *Kennedy v. Wood* (1982), Ind.App., 439 N.E.2d 1367 (paternity); *In Matter of Jennings* (1978), 176 Ind.App. 277, 375 N.E.2d 258 (juvenile probation revocation); *Robison v. Elston Bank & Trust Co.* (1943), 113 Ind.App. 633, 48 N.E.2d 181, *en banc* (probate).

5. An indigent's right to a free transcript in criminal and quasi-criminal proceedings is expansive. *Williams v. Oklahoma City* (1969), 395 U.S. 458, 89 S.Ct. 1818, 23 L.Ed.2d 440 (municipal ordinance violation); *Gardner v. California* (1969), 393 U.S. 367, 89 S.Ct. 580, 21 L.Ed.2d 601 (*habeas corpus* ); *Lane v. Brown* (1963), 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (*coram nobis* ).

ration of the record of proceedings without cost to indigent civil appellants. The time has come.

Our holding is compelled by constitutional and statutory provisions. Article 7, § 6 of the Indiana constitution gives litigants in Indiana courts an absolute right to one appeal in all cases:

Jurisdiction of the Court of Appeals. The Court shall have no original jurisdiction, except that it may be authorized by the rules of the Supreme Court to review directly decisions of administrative agencies. In all other cases, it shall exercise appellate jurisdiction under such terms and conditions as the Supreme Court shall specify by rules *which shall, however, provide in all cases an absolute right to one appeal* and to the extent provided by rule, review and revision of sentences for defendants in all criminal cases.[6]

6. Although the right to appeal did not gain constitutional dimension until well into the twentieth century, it has existed, albeit originally in limited circumstances, since the earliest days of Indiana statehood.

The first order of business of the first session of the General Assembly which met at Corydon in 1816 was to pass "An act organizing the supreme court, and regulating the practice therein." Approved December 23, 1816, section 7 of the act granted to the supreme court "appellate jurisdiction in all cases, both in law and equity coextensive with the limits of the state: except in such cases as shall hereinafter be excepted...." *Laws of Indiana,* Chapter I (1816). One striking exception involved criminal appeals: "nothing herein shall be so construed as to authorize an appeal from any inferior court to the Supreme court in any criminal case; nor shall any writ of error operate as a supersedeas in a criminal case." *Id.* A few convicted defendants were afforded appeals to the circuit courts. For example, an individual convicted of gaming but "considering himself or herself aggrieved by the judgment ... may appeal to the next circuit court to be holden for the county wherein such conviction may happen." *Laws of Indiana,* Chapter X (1816). Civil litigants confounded by decisions issued by justices of the peace, however, were entitled to appeal all cases "where such judgment shall exceed the sum of three dollars, exclusive of interest thereon and cost of suit." *Laws of Indiana,* Chapter V (1817). Similarly, the legislature provided a right to appeal from decisions of the Board of Commissioners under *Laws of Indiana,* Chapter VIII (1817). A person "thinking himself aggrieved" in any case arising under an act supplemental to the organization and regulation of the state militia was entitled to appeal to the regimental court of enquiry. *Laws of Indiana,* Chapter XXXVIII (1817). Even indigent litigants were considered by our legislature. A poor person who made oath he or she was "not worth in property, clear of all debts, ten dollars" and who was aggrieved by a judgment of the justice of the peace was entitled to appeal to the circuit court. *Laws of Indiana,* Chapter 14 (1818). Moreover, provision was made for the waiver of costs associated with writs and process, and court clerks were instructed to appoint counsel "learned in law, and appoint all other officers requisite and necessary to be had for the speed of the said suit, who shall do their duties without any reward for their service, help and business in the same." *Id. Cf.* IND.CODE 34–1–1–3, *supra.* Those attorneys or other officers who did accept payment or reward, directly or indirectly, were to forfeit the princely sum of $500.

By 1842, it appears, the right to appeal was more firmly entrenched in Indiana's judicial philosophy. "The right of appeal is absolute by the statute, and cannot be restrained by the Court, except so far as to see the proper security be given by the appellant." *Martin v. Martin* (1842), 6 Blackf. 321, 322. Despite the "absolute" language in *Martin,* however, the right of appeal was still limited to certain actions decided in certain courts. See, for example, *Moore v. Read* (1822), 1 Blackf. 178, and in particular *French v. Lighty* (1857), 9 Ind. 475 ("Revised Statutes, p. 269, ... gives an appeal in certain cases to the Circuit Court, but to none higher") and *Allen v. Hostettler* (1860), 16 Ind. 15, 18 ("It was [in *French v. Lighty*], in effect, held that the general statute, upon the subject of appeals, was enacted in view of usual and ordinary civil proceedings, and did not embrace proceedings under that special act"), modified by *Hanna v. Board. of Comm'rs of Putnam County* (1867), 29 Ind. 170. These two latter cases were based on an 1852 statute which allowed an appeal to be taken from courts of common pleas and circuit courts to the supreme court, "except in actions originating before a justice of the peace, or mayor of the city, where the amount in controversy, exclusive of interest and costs, does not exceed ten dollars." *Statutes of Indiana,* Article XXVII (1852).

As the General Assembly continued to grant Indiana litigants the right to appeal in more situations, the number of appeals increased, occasioning legislative changes in the procedure used to hear and decide the appeals. "Indiana has enacted no less than six complete and different schedules for appeals to the two courts, in 1891 (Acts, Ch. 37), 1893 (Acts, p. 29), 1901 (Acts, Ch. 247), 1907 (Acts, Ch. 148), 1911 (Acts, Ch. 117), and 1914 (Acts, Ch. 76), besides minor changes." Sunderland, *Problems of Appellate Procedure,* 3 Notre Dame Lawyer 50, 58 (1927). It was during this era that the Indiana Appellate Court was created, later renamed the Indiana Court of Appeals. It was also at this time the

(Emphasis added.) Our supreme court has promulgated an extensive set of rules of appellate procedure to guide those litigants who choose to exercise their absolute right to an appeal. Foremost among these rules is the requirement that the appellant provide the reviewing court with a record of the proceedings. Ind. Appellate Rule 7.2(A); *Anderson v. Indiana State Employees' Appeal Comm.* (1977), 172 Ind. App. 529, 360 N.E.2d 1040 (duty to supply record sufficient to permit intelligent decision of issues falls upon appellant). The record of the proceedings consists of a copy of the praecipe (and, when used, a copy of the Motion to Correct Error), copies of all papers filed or offered to be filed with the clerk of the trial court during the course of the action, a copy of the order book entries, and the transcript of the evidence and proceedings at trial. Ind.App. Rule 7.2(A).

As every appellant knows, however, the cost of preparing the required record of the proceedings can be exorbitant. Indiana law authorizes court reporters and clerks to prepare these documents and charge various amounts,[7] and it is not at all uncommon for the records to be hundreds or thousands of pages long, and to cost hundreds or even thousands of dollars.[8] Indeed, the cost of a record can exceed the costs[9] of an appeal. In the case of an indigent appellant, then, the expense in preparing a record of the proceedings could and in most instances would be simply prohibitive.

Given the fact our supreme court's rules require records of the proceedings to decide an appeal, the doors to our appellate courtrooms are effectively closed to indigent appellants. Yet Article I, § 12 of our constitution requires Indiana courts to remain open and to administer justice freely and without purchase:

> All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay.

The "fundamental constitutional right of access to the courts" demanded by Article I, § 12 is rendered an empty boast by the denial of records of the proceedings prepared on behalf of indigent appellants without cost to them. *Engle v. State* (1984), Ind., 467 N.E.2d 712, 715 (Article I, § 12 requires prison officials to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with law libraries or adequate assistance from persons trained in the law).

In our opinion, the above constitutional provisions together with IND.CODE 34-1-1-3 entitle indigent civil appellants to records of the proceedings prepared without expense to them. Under IND.CODE 34-1-1-3, the court "shall" admit the indi-

---

first inklings that a right to appeal may be constitutionally grounded developed. The court in *Lake Erie and Western Railway Company v. Watkins* (1902), Ind., 157 Ind. 600, 62 N.E. 443 observed "[t]he creation of a Supreme Court by the Constitution is at least an implied declaration of that instrument that the right of appeal in some class of cases shall exist." *Id.* at 607, 62 N.E. 443. In *Pittsburgh, Cincinnati, Chicago and St. Louis Railroad Co. v. Hoffman* (1928), 200 Ind. 178, 162 N.E. 403, the court stressed that the legislature's regulation of the appellate process must be kept "within reasonable limits" so as to accommodate the policy of the constitution's framers that "the varying demands and changing necessities of the people might be satisfied." *Id.* at 192, 162 N.E. 407.

It is not unreasonable for the protections afforded one already convicted and contemplating an appeal to differ from the protections afforded one merely accused of crime and preparing for trial. Similarly, safeguards may differ with respect to civil litigants and appellants. Nevertheless, appellate review in Indiana is an inviolate protection afforded all litigants, civil and criminal alike. By constitutional *fiat*, litigants "in all cases" now enjoy the "absolute" right to appeal first heralded in *Martin, supra.* The varying demands and changing necessities of the people have been met.

**7.** IND.CODE 33-15-23-1 *et seq.;* IND.CODE 33-19-6-1.

**8.** Campbell's record is 351 pages long, and his case did not even reach trial.

**9.** IND.CODE 33-15-5-2 requires the clerk of the supreme court to charge a $250 filing fee in each cause filed in either the supreme court or the court of appeals. *See also* Ind.App. Rule 3 (amended February 11, 1992).

gent party to "prosecute or defend" the action, and "shall" assign to the indigent party an attorney "and all other officers requisite for the prosecution or defense" without cost to the indigent.

"It is the function of this court to ascertain and implement the legislature's intent and the legislature's intent must be primarily determined by giving effect to the ordinary and plain meaning of the language used in the statute." *Henricks v. Fletcher Chrysler Products* (1991), Ind.App., 570 N.E.2d 115, 116. Additionally, we endeavor to give the statute in question a practical application so as to prevent absurdity, hardship, or injustice, and to favor public convenience. *Baker v. State* (1985), Ind. App., 483 N.E.2d 772, *trans. denied.*

Here, IND.CODE 34-1-1-3 plainly refers to "all other officers requisite to defend or prosecute the cause[.]" Court clerks and reporters are unquestionably "other officers" within the meaning of the statute. Because as a condition for appeal we require the preparation of a record, a duty incumbent upon the court clerk and reporter, no long leap of faith is needed to conclude our General Assembly intended the necessary record preparation services of clerks and court reporters, as "other officers," to be included in the services provided to indigent parties. Moreover, the word "prosecute," meaning "to pursue or persist in so as to complete," AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1050 (4th printing, 1969), logically refers to appellate actions. *See Ray Wong v. Earle C. Anthony, Inc.* (1926), 199 Cal. 15, 247 P. 894; *Eastman Marble Co. v. Vermont Marble Co.* (1920), 236 Mass. 138, 128 N.E. 177; *Service & Wright Lumber Co. v. Sumpter Valley Ry. Co* (1915), 81 Or. 32, 152 P. 262.

Neither are we persuaded the "prosecute or defend" language of IND.CODE 34-1-1-3 precludes publicly funded assistance in all non-criminal actions. To our knowledge, this section has never been so construed. In a thoughtful discussion on the indigent civil appellant's right to a transcript prepared at public expense, Judge Skelly Wright observed that it is the impor-

tance of the right to the individual, not the technical distinction between civil and criminal, which should be of importance to a court in deciding what procedures are required in each case. *Lee v. Habib* (1970), 424 F.2d 891, 901. A civil litigant may have as much at stake on appeal as a criminal litigant. For example, Rocky Campbell here seeks compensation for the loss of all his worldly possessions. Just as laws and procedures which discriminate against indigent criminal defendants are inconsistent with the premise of equal protection under the law, *Brown v. State* (1975), 262 Ind. 629, 322 N.E.2d 708, so too are rules which discriminate against indigent civil litigants. The law demands protection of life, liberty, and property alike.

"The right of all to have free access to the courts is basic to our democratic system. It too cannot be conditioned on the payment of a fee where such a condition precludes the exercise of the right." *Lee, supra,* at 901. Our constitutional and statutory provisions prohibit tolerance of invidious discrimination that prevents an indigent appellant from meaningful appellate review based solely on the indigent's inability to pay the cost of the record of the proceedings. "[There] is no meaningful distinction between a rule which would deny the poor the right to defend themselves in a trial court and one which effectively denies the poor an adequate appellate review accorded to all who have money enough to pay the costs in advance." *Griffin, supra,* 351 U.S. at 18, 76 S.Ct. at 590. "[I]t is now fundamental that, once [avenues of appellate review are] established, these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts." *Rinaldi v. Yeager* (1966), 384 U.S. 305, 310, 86 S.Ct. 1497, 1500, 16 L.Ed.2d 577, 581. We hold Campbell is entitled to a record of the proceedings prepared on his behalf without cost to him.

Although Indiana law requires the preparation of records without cost to indigent appellants, we are aware of the need for caution in providing them. As stated by our supreme court,

It is manifestly the duty of the courts to see to it that justice is not allowed to fail, and that no one is denied the opportunity of asserting his rights under the law because he is an object of charity; but it is equally their duty not to encourage unnecessary and fruitless litigation, or to allow the public treasury to be opened, merely to harass persons against whom speculative claims in which no merit is apparent, may be asserted.

*Hoey v. McCarthy* (1890), 124 Ind. 464, 466, 24 N.E. 1038, 1039.

Mindful of the specter of "unnecessary and fruitless litigation," *id.*, we remind potential indigent litigants that the appropriate procedure for initiating a request for the waiver of "required fees or other court costs" is to file with the trial court, under oath and in writing, a statement 1) declaring that the person is unable to make payment or give security because of the person's indigency, 2) declaring that the person believes he or she is entitled to the redress sought in the action, and 3) briefly setting forth the nature of the action. IND.CODE 33-19-3-2, *supra*.

■■■ The indigent litigant, of course, may seek to appeal any appealable decision the trial court has issued, and may seek waiver of the expense involved in preparing a record of the proceedings for appeal under the authority of this Order. Upon receiving a request from an indigent party to waive the cost of the preparation of the record, we hereby direct the trial court first to assist the appellant in determining which portions of the record of the proceedings are required for effective appellate review, and then to determine the most appropriate method of preparing that record; the goal is to eliminate unnecessary expenses.[10] The method of preparing the record may vary depending upon the circumstances. In appropriate situations, as when only a limited portion of the evidence is necessary for effective review, the trial court may provide the appellant with duplicate audio tapes of the proceedings in order to facilitate the preparation of a statement of the evidence of the proceedings. In other situations, the trial court may direct the parties to attempt to make an agreed statement of the evidence under Ind.App. Rule 7.3.

■■■ We wish to emphasize that an indigent party is not to be penalized because the trial court has failed to provide an adequate record, although the indigent party must suffer the consequences of his or her own selection. Should the indigent be dissatisfied with the trial court's choice of which portions of the record have been made available to the appellate court without cost, we observe the availability of two options: Ind.App. Rule 7.2(C) and the preappeal conference pursuant to Ind.App. Rule 2(C). Under the former, when a party disputes "whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by the trial court and the record made to conform to the truth." In addition to giving aggrieved parties a forum to air their views regarding the contents of the record, the latter rule allows the appellate court to disclose its own views about which portions of the record of the proceedings are essential (and which are not), and empowers it to issue writs of certiorari for obtaining any absent but necessary portions.

■■■ We make one final observation in our attempt to allay fears that our decision today will prove too costly or onerous. In situations where an indigent has abused his or her status, IND.CODE 34-1-1-4 permits a court, in its discretion, to vacate its previous order admitting the person to prosecute or defend as an indigent under IND. CODE 34-1-1-3, *supra*.

Although the constitutional elm tree towering above the grounds at Corydon in the early years of our statehood may have passed from this earth, the sentiment expressed by our first lawmakers in its shade continues to this day. Arbitrary economic discrimination in the halls of justice is wrong. We must continue to assist the

---

**10.** In fact, Ind.App. Rule 7.2(B) *prohibits* a party from requesting unnecessary papers: "Neither party shall request parts of the record or a transcript of the proceedings which are not needed for the issues to be asserted upon the appeal...."

poor of Indiana if we are to adhere to the constitutional mandate of justice for all. Indiana lawmakers and citizens alike have time and again demonstrated concern and generosity for the poor; we consider our Order today merely a reflection of that noble spirit.

## DECISION

We grant Campbell's petition to proceed on appeal *in forma pauperis.* All costs are waived, including the appellate filing fee. We instruct the trial court that Campbell's counsel is entitled to reimbursement for the funds advanced on Campbell's behalf.

There is no need to remand this cause to the trial court because we are already in possession of a record sufficient for effective review. The parties are instructed to submit briefs in accordance with the time limitations imposed by Ind.App. Rule 8.1(A), effective the day this Order is handed down.

SHIELDS and SULLIVAN, JJ., concur.