PROGRESS LAUNDRY COMPANY ET AL. *v.* COOK ET AL.

[No. 15,559.   Filed December 20, 1935.]

*Ralph B. Gregg,* for appellants.

*Oscar C. Hagemier* and *Harry B. Perkins,* for appellees.

KIME, P. J.—On November 30, 1934, Ernest H. Cook was found dead lying at the bottom of an elevator shaft at the place of his employment.   Thereafter appellees,

surviving widow and children of decedent, filed with the Industrial Board their application for the adjustment of a claim for compensation by reason of his death. Upon hearing the evidence on said application the single member made an award in favor of appellees. Upon review of the award, no additional evidence being heard, the full Industrial Board made an award in favor of appellees and in its finding said that the decedent "suffered an injury as the result of an accident arising out of and in the course of his employment. . . ."

From this award appellants appeal, assigning as error that the award is contrary to law.

The evidence reveals that decedent was a night watchman for appellant, Progress Laundry Company, and as such had supervision of the boilers and of the plant during the night time and his duties required him to go from one floor to the other in the laundry building. There were two elevators in the laundry building and the employees, if they so desired, could use them. When the gates were up on both sides on the same floor the elevator was then used as a passageway. The elevator gates, composed of small slats on weights, on the different floors could be raised irrespective of the location of the elevator with respect to floors.

On the above date, about 10:30 o'clock P. M., at a time when the decedent was on duty as night watchman, he was found dead at the bottom of an elevator shaft, which shaft extends from the basement to the second floor of a two-story building. That at that time the gate on the first floor leading to the elevator shaft was up and the elevator was on the second floor. The elevator gates in the basement were closed. It was eighteen feet from the open door landing on the first floor to the bottom of the shaft. The building was completely dark.

The evidence further discloses that decedent and one Watkins, a car washer, were the only employees at work

on the premises of appellant, Progress Laundry Company. Watkins worked in the garage which was separate from the building in which decedent was found dead. During the early part of the evening Watkins received a telephone call asking for a Mr. Briggs, who was supposed to be on the premises repairing some water softeners, and Watkins thereupon went to the boiler room and had a conversation with decedent. Decedent then came out of the boiler room, unlocked the big iron gate, went through it, unlocked the little door and went through it into the building. Watkins did not see the decedent alive again. One-half hour later decedent had not reappeared and all this time Watkins stood by the gate and waited for decedent. There was another telephone call inquiring for the man supposed to be fixing the water softeners. Watkins then went to the corner restaurant and called his employer.

It is further shown that the police officers, who found the body, were admitted into the building by Watkins, who unlocked the laundry door to admit them and that after finding the body they searched the entire building and found no one else, but *found that everything leading to the outside was locked.*

Decedent died as a result of a fractured skull. Decedent also had sustained abrasions over both knees and a left patella fracture.

Was there evidence to sustain the finding of the board that decedent died as the result of an accident arising out of and in the course of his employment? is the question presented here.

Decedent here had supervision of the boilers of the plant during the night time and his duties required him to go from one floor to the other in the laundry building. He was found dead at the bottom of the elevator shaft. As above indicated, the elevator was used at times as a passageway. From the above

facts, all of which were in evidence, excluding the coroner's verdict, the Industrial Board could have legitimately presumed, as it probably did, that decedent, in line of duty, finding the gate up on one side of the first floor, assumed that the elevator was on that floor and in attempting to cross fell into the elevator shaft and in coming in contact with the cement floor thereof sustained the fractures to his skull, which caused his death. When an employee is found dead at a place where the performance of his duty called him his death is presumed to have arisen out of and in the course of his employment. *Fisher* v. *City of Decatur* (1934), 99 Ind. App. 667, 192 N. E. 844; *Capitol Paper Co.* v. *Conner* (1924), 81 Ind. App. 545, 144 N. E. 474.

Appellants insist that the coroner's verdict was incompetent evidence and that, therefore, its admission was reversible error. An award of the Industrial Board will not be reversed because of the admission of incompetent evidence if there is competent evidence to support it. *United Paper Board Co.* v. *Lewis* (1917), 65 Ind. App. 356, 117 N. E. 276; *Kauffman* v. *Board* (1925), 83 Ind. App. 482, 148 N. E. 496; *The John C. Groub Co.* v. *Brock* (1932), 94 Ind. App. 346, 180 N. E. 923.

The award herein of the Industrial Board is affirmed and the mandatory five per cent is added thereto.

Dudine, J., concurs in result.