WARREN *v.* INDIANA TELEPHONE COMPANY.

[No. 27,402. Filed April 9, 1940.]

94

96

98

*Connor D. Ross,* of Indianapolis; and *Joseph M. Cooper,* of Madison, for appellant.

*Thomas M. Cooney* and *Berger Van Brunt,* both of Indianapolis, for appellee.

SHAKE, C. J.—By leave, the appellant has filed a petition to transfer this cause from the Appellate Court of Indiana and for a writ of error to said court. The case originated before the Industrial Board of Indiana. The Appellate Court affirmed with an opinion on January 4, 1940. Transfer is sought by virtue of our rule 24 and Acts of 1901, ch. 247, § 10, p. 565; Acts of 1933, ch. 151, § 1, p. 800, § 4-215, Burns' 1933, § 1359, Baldwin's 1934.

The original Indiana Workmen's Compensation Act (Acts 1915, ch. 106, § 61, p. 410) provided for an appeal from an award of the Industrial Board "to the appellate court for errors of law under the same terms and conditions as govern appeals in ordinary civil actions." This provision has been carried forward into the present compensation statute. (Acts 1929, ch. 172, § 61, p. 536, § 40-1512, Burns' 1933, § 16437, Baldwin's 1934.) In the case of *Kingan & Co.* v. *Ossam* (1921), 190 Ind. 554, 131 N. E. 81, this court held that there was no right of transfer from the Appellate Court to this court under the said act of 1901 in cases originating under the Compensation Act of 1915, and dismissed the petition therefor. We are asked to overrule that case. The matters presented challenge us to consider some very serious and important questions, among which may be mentioned, the place of the Supreme Court in the judicial system of the state; the power of the

General Assembly with respect to administrative agencies; the constitutional guaranties of due course of law for injury done to the person; and the inviolate right to trial by jury in civil cases.

The Constitution of Indiana provides that: "The powers of the Government are divided into three separate departments; the Legislative, the Executive including the Administrative, and the Judicial; and no person, charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided" (Article 3, § 1); "The judicial power of the State shall be vested in a Supreme Court, in Circuit Courts and such other courts as the General Assembly may establish" (Article 7, § 1); "The Supreme Court shall have jurisdiction, co-extensive with the limits of the State, in appeals and writs of error, under such regulations and restrictions as may be prescribed by law. It shall also have such original jurisdiction as the General Assembly may confer" (Article 7, § 4); "All courts shall be open; and every man, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay" (Article 1, § 12); and, "In all civil cases, the right of trial by jury shall remain inviolate" (Article 1, § 20). These provisions of the Constitution are a part of the fundamental law of the state, declared by the people themselves acting in their sovereign capacity. *Ellingham* v. *Dye* (1913), 178 Ind. 336, 99 N. E. 1, Ann. Cas. 1915C 200. As such they are entitled to strict construction. *Lafayette, Muncie, and Bloomington R. R. Co. and Another* v. *Geiger* (1870), 34 Ind. 185. It has been said that the language of each provi-

sion of the Constitution is to be considered as though every word had been hammered into place. *State ex rel. Hovey* v. *Noble* (1888), 118 Ind. 350, 353, 21 N. E. 244.

Under the Constitution the right to a jury trial must remain inviolate in civil cases. This guaranty is self-executing and will be enforced independent of statutory enactment. *Schembri* v. *Shearer* (1935), 208 Ind. 97, 194 N. E. 615. But the civil cases referred to have reference only to those actions which were triable by jury at common law. *W. T. Rawleigh Co.* v. *Snider* (1935), 207 Ind. 686, 194 N. E. 356. Actions for injuries to the person caused by the negligence of another were known under the common law of England, and triable by jury. It follows, therefore, that the right to a jury trial in common-law actions for injuries to the person due to negligence is fully protected by Article 1, § 20, of our Constitution. The question arises then, whether the Workmen's Compensation Act abrogates that right. We think not. In the first place, the rights and duties provided for in the Compensation Act are contractual in character, that is to say, they arise out of the voluntary acceptance of the terms thereof on the part of the employer and the employee. *Calkins* v. *Service Spring Co.* (1937), 103 Ind. App. 257, 7 N. E. (2d) 54. Having elected to be bound by the act, a party is in no position to complain that his right to a jury trial is no longer available to him. In this regard such a party is in no different position from one who agrees to arbitrate his defenses with another. Secondly, an injured employee who has elected not to operate under the act has the full benefit of his common-law action for negligence. True, he puts his employer in a position to defend upon grounds of contributory negligence,

assumption of risk, and the negligence of a fellow servant, but these were common-law defenses incident to the action of trespass, and we find no constitutional guaranty that they shall not be made available to one sued for personal injuries due to his alleged negligence. The abrogation of these defenses under the Employers' Liability Law prior to the enactment of the Compensation Law was purely a matter of legislative wisdom, and they might have been retained if no Compensation Act had been enacted. The requirement for notice of election to operate without the Compensation Act is not unreasonable and is well within the legislative power. The conclusion is inevitable that the Compensation Law does not violate the constitutional mandates that the courts shall be open; that every man for injury done to him in his person shall have remedy by due course of law; or that the right of trial by jury shall remain inviolate in civil cases.

We are not unmindful of the fact that § 18 of the Compensation Act (§ 40-1218, Burns' 1933, § 16394, Baldwin's 1934) makes its provisions compulsory upon the state, political divisions thereof, municipal corporations, and persons, partnerships, and corporations engaged in the business of mining coal, and the employees thereof, without any right of exemption. It was within the power of the General Assembly to fix the liabilities of the state, its divisions, and of municipal corporations, or to provide that there should be no such liabilities. As to those engaged in mining, a different situation exists. The Supreme Court of the United States held in the case of *Lower Vein Coal Co.* v. *Industrial Board* (1921), 255 U. S. 144, 41 S. Ct. 252, 65 L. Ed. 555, that this section of the statute does not violate the Fourteenth Amendment or §§ 21 and 23 of the Indiana Bill of Rights, but we

have found no authority for the conclusion that it does not violate Article 1, § 12, which guarantees the right of trial by jury in civil cases known to the common, law. Upon that subject we do not find it necessary to express an opinion at this time.

The Industrial Board of Indiana is not a court; it is an administrative body, vested with quasi-judicial powers. *In re Ale* (1917), 66 Ind. App. 144, 117 N. E. 938; *Frazer* v. *McMillin & Carson* (1932), 94 Ind. App. 431, 179 N. E. 564; *Inland Steel Co.* v. *Pigo* (1932), 94 Ind. App. 659, 182 N. E. 279. As an administrative agency, the board is properly vested with power to determine facts, and the exercise of that power meets the requirements of due process of law, so far as the function of determining facts is concerned. It is not necessary to the exercise of due process that the facts be determined by a court, so long as there is provided or exists an opportunity for a judicial review.

The Compensation Act provides for agreements between the parties to be approved by the Industrial Board and for a hearing before a member of the board when a dispute arises between an employer and an employee. There may be a review by the full board, in which event the board shall make a finding of facts and an appropriate award. An approved compensation agreement or an award may be reduced to judgment in the circuit or superior court of the county in which the accident occurred. The act also provides:

"An award by the full board shall be conclusive and binding as to all questions of (the) fact, but either party to the dispute may, within thirty (30) days from the date of such award appeal to the Appellate Court for errors of law under the same terms and conditions as govern appeals in ordinary

civil cases." (Acts 1929, ch. 172, § 61, § 40-1512, Burns' 1933, § 16437, Baldwin's 1934.)

Strictly speaking, there is no such thing as an appeal from an administrative agency. It is correct to say that the orders of an administrative body are subject to judicial review; and that they must be so to meet the requirements of due process. Such review is necessary to the end that there may be an adjudication by a court of competent jurisdiction that the agency has acted within the scope of its powers; that substantial evidence supports the factual conclusions; and that its determination comports with the law applicable to the facts found. The provision of the Compensation Act for a so-called appeal to the Appellate Court, whereby that tribunal is authorized to say whether the finding of facts made by the board and the award entered thereon are contrary to law, supplies every requirement of due process. In other words, when the Industrial Board has made a special finding of facts and entered an order or award, and the Appellate Court has considered whether the award is contrary to law, every essential element of due process has been met and the complaining party has had his day in court.

The Compensation Act is not the first instance in which original jurisdiction was conferred on the Appellate Court. The act creating the Railroad Commission gave that court authority to review the proceedings of the commission. Acts 1905, ch. 53, § 6; *Chicago, etc., R. Co.* v. *Railroad Com., etc.* (1906), 38 Ind. App. 439, 78 N. E. 338, 79 N. E. 520. But it was held that there was no right of transfer from the Appellate Court to this court in cases in which the Appellate Court exercised original as distinguished from appellate jurisdiction. This conclusion was reached because the act

providing for such transfers (Acts 1901, ch. 247, § 10, § 4-215, Burns' 1933, § 1359, Baldwin's 1934, as amended) directs that "upon the filing of such application . . . the clerk shall not certify to the lower court the opinion and judgment of said division of the Appellate Court, unless and until the Supreme Court denies the application." In *State, ex rel.* v. *Deupree* (1907), 169 Ind. 279, 280, 82 N. E. 452, this court said:

> "The language quoted shows, beyond a peradventure, that it was the legislative contemplation that this court should not assume jurisdiction over any cause which had not originated in a trial court . . ."

In *Kingan & Co.* v. *Ossam, supra,* it was held that the general statute governing the transfer of cases from the Appellate Court to this court must give way to the Compensation Act, which is special in nature and which indicates by its language that no transfer in cases arising thereunder was contemplated.

It would seem, therefore, that no objection can be found to the provision of the Compensation Act that vests jurisdiction for review of proceedings instituted before the Industrial Board in the Appellate Court, rather than in local courts or constitutional or statutory courts of general jurisdiction. While the Appellate Court is primarily a court of appeals, it is a creature of the Legislature, and it was well within the power of the General Assembly to give it original jurisdiction to review the proceedings of the Industrial Board.

What has been said leads to the major question here presented; that is, whether this court reached the proper conclusion when it held in *Kingan & Co.* v. *Ossam, supra,* that the determination of the Appellate Court is final in compensation cases.

This requires us to reconsider a great many things that have been said by this court respecting its own jurisdiction. We approach the subject with due appreciation of its gravity. When a court from which there may be no appeal undertakes to speak with regard to its own powers, it ought to exercise great caution and restraint.

The Constitution of Indiana says that: "The Supreme Court shall have jurisdiction, co-extensive with the limits of the State, in appeals and writs of ▇ error, under such regulations and restrictions as may be prescribed by law" (Article 7, § 4.) It is to be noted that the jursidiction of this court in appeals and writs of error is absolute, which is quite different than if the Constitution had provided that such jurisdiction should be exercised in such cases as the Legislature might direct. The only power of the General Assembly over such jurisdiction is to regulate and restrict it. The words, "regulate and restrict," as used in the Constitution, have long had a clear and definite meaning. They do not imply the right to prohibit or forbid. *Opinion of the Justices to the Senate* (1919), 232 Mass. 605, 124 N. E. 319. In *Curless* v. *Watson* (1913), 180 Ind. 86, 98, 99, 102 N. E. 497, this court had occasion to consider the validity of an act of the Legislature which undertook to take away the right of transfer from the Appellate Court to this court in certain cases. In an exhaustive opinion, supplemented by two concurring views and a dissent in which two members of the court joined, the constitutional powers of the Supreme Court were thoroughly considered. We agree with the views expressed in the principal opinion, where it was said:

> "It is contended that the power to regulate and restrict the Supreme Court, in appeals, gives the legislature the right to take away the final jurisdiction of appeals, and bestow it upon whomsoever

it may see fit. . . . While the legislature may regulate and restrict the Supreme Court, as to how it may take jurisdiction, it cannot take away from the court the jurisdiction over this particular subject, granted by the Constitution, and bestow it upon any other tribunal, and a legislative enactment, which seeks to do so is contrary to the Constitution. The legislature has the undoubted right to regulate appeals, but the power to regulate does not give authority to take away, or bestow it upon another tribunal.

"The only ground upon which the creation of the Appellate Court can be constitutionally justified is, that jurisdiction may be conferred upon it to determine such cases as the legislature may designate, subject to the constitutional power vested in the Supreme Court to review its action, either upon writs of error or certiorari, as an inherent power under the Constitution, which even the legislature cannot take away."

It therefore appears that while the Legislature vested exclusive jurisdiction in the Appellate Court to review the proceedings of the Industrial Board, it did not provide any procedural machinery for an appeal or review. This presents a serious situation. Substantive rules of law of the most important consequences to litigants may be directly or indirectly involved in the exercise of original jurisdiction of the Appellate Court in reviewing compensation cases. These may concern the broad powers of administrative agencies, the materiality and weight of evidence, and many other matters that might be suggested.

Uniformity in the interpretation and application of the law is the keystone of our system of jurisprudence. Special privileges are abhorred and laws of a local or class nature prohibited in so far as possible. These principles are emphasized and reiterated in our state Constitution. We have already quoted the provisions that: "All courts shall be open;

and every man, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay" (Article 1, § 12), and, "The Supreme Court shall have jurisdiction, co-extensive with the limits of the State, in appeals and writs of error, under such regulations and restrictions as may be prescribed by law" (Article 7, § 4). The Constitution also provides: That "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens" (Article 1, § 23); that ". . . in all . . . cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the State" (Article 4, § 23); that "The General Assembly shall not pass local or special laws, in any of the following enumerated cases, that is to say: . . . (3) Regulating the practice in courts of justice" (Article 4, § 22); that "The General Assembly . . . shall provide . . . that justice shall be administered in a uniform mode of pleading" (Article 7, § 20); that "The Supreme Court shall, upon the decision of every case, give a statement in writing of each question arising in the record of such case, and the decision of the Court thereon" (Article 7, § 5); and that "The General Assembly shall provide, by law, for the speedy publication of the decisions of the Supreme Court, made under this Constitution" (Article 7, § 6). These quotations are enough to indicate beyond doubt that it was the positive intention of the framers of our Constitution that the laws of this state should be general and uniform so far as it is possible to make them so. Such uniformity cannot be attained or preserved if the courts that interpret and apply the laws are not required to

take their controlling precedents from some common source. If other courts than this court are to be permitted to construe statutes and state rules of substantive law, without recourse being provided for review by this court, the result will be as destructive to uniformity as if the Legislature was permitted to enact local and special laws for every county in the state.

We are not unmindful that it has been many times said that there is no inherent right to appeal any case to this court and that it is for the Legislature to say what cases may and what may not be brought here. The cases so holding are enumerated and discussed in the dissenting opinion of Morris, J., in *Ex parte France* (1911), 176 Ind. 72, 104, 95 N. E. 515. In some of these cases there is qualifying language to the effect that the Legislature may not forbid appeals in all cases so as to render this court impotent. Where the line is to be drawn between those that may be appealed here as of right and those where appeals may be forbidden by statute has never been clearly suggested. There has been a disposition on the part of this court to deny the right of appeal in certain so-called statutory proceedings. Thus in *Stockton* v. *Yeoman* (1913), 179 Ind. 61, 100 N. E. 2, it was held that there was no right of appeal in a proceeding for the improvement of a public highway which originated before a board of county commissioners and in which the circuit court rendered a judgment for the remonstrators. The evils that may flow from such a conclusion are innumerable. If there is to be no review in such cases there may arise a situation where the statutes of the state will have a different interpretation even in adjoining counties, depending upon the construction placed upon them by the respective circuit judges. Generally speaking, there is ample authority for the proposition that there is no

inherent right of appeal. When due process has been provided, the unsuccessful litigant has no inherent right to carry the case to another tribunal, in the absence of some constitutional guaranty. The confusion in our decisions on the subject appears to be due to the fact that this court has loosely adopted the language of other courts that were not hampered by any such constitutional provisions as obtain in this state. We therefore disapprove of the language contained in the many cases which seem to suggest that the right of appeal to this court exists only by the grace of the legislative branch of the government.

There is a statute in this state which prohibits an appeal in any civil case where the amount in controversy, exclusive of interest and costs, does not exceed $50. A subsequent section makes the act inapplicable where there is involved and presented a question as to the validity of a franchise or ordinance, the construction or constitutionality of a statute, or rights guaranteed by the state or federal Constitutions. §§ 4-211, 4-213, Burns' 1933, §§ 1319, 1355, Baldwin's 1934. The administrative expense necessary for the operation of this court is not inconsiderable. In addition to the personnel of the court, there must be maintained a clerk's office, an official reporter, a sheriff, and other employees. The opinions of the court are required to be written and published. The burden of this expense ultimately rests upon the shoulders of the taxpayers, and they have a right to demand that the time of this tribunal shall not be consumed with trivial and inconsequential matters. It is common knowledge, and this court judicially knows, that there is also an expense to the parties attached to the appeal of any case. Authenticated records must be obtained and filed, briefs must be prepared and sub-

mitted, and the case may be orally argued if a request is made by either party. It is not unreasonable, therefore, to deny appeals in those cases where no important legal principles can possibly be involved and where the expense to the litigants themselves would exceed the amount of the judgment sought to be reviewed. The class of appeals which the above statute undertakes to prohibit is closely akin to moot questions which courts will, on their own initiative and in the absence of any statute, refuse to consider. This statute has long been acquiesced in by this court, and its provisions could be amply justified without predicating it upon the authority of the General Assembly to regulate and restrict the jurisdiction of this court. In the final analysis, this court must be the judge of its constitutional jurisdiction.

Under the common law of England appeals were allowable in chancery cases and writs of error in actions at law. The distinctions in the remedies were these: On appeal in an equity case there was a trial de novo, while under a writ of error in an action at law the record was reviewed and the judgment affirmed, reversed, or modified. In this country the strict differences between appeals and writs of error have not been generally observed and the terms have frequently been used interchangeably. The Legislature of Indiana in 1852 abolished the distinctions between actions at law and suits in equity, and at the same time abolished writs of error in both civil and criminal cases. Provision was made for appeals in all cases where a judicial decision was sought to be brought before the court of last resort for review. (II Revised Statutes 1852, Article I, § 1, p. 27; Article XXVII, § DL, p. 269.) Under the common-law practice, the writ of error had definite characteristics. It was

directed to an inferior court, and used to assign error as relating only to matters at law arising upon the face of the proceedings, so that no evidence was required to substantiate or support it. The statutory provision for the transfer of cases from the Appellate Court to this court affords substantially the same relief granted by the common-law writ of error. *Pittsburgh, etc., R. Co.* v. *Hoffman* (1928), 200 Ind. 178, 162 N. E. 403.

The Constitution requires that: "The Supreme Court shall, upon the decision of every case, give a statement in writing of each question arising in the record of such case, and the decision of the Court thereon" (Article 7, § 5). This mandate is likewise binding on the Appellate Court of Indiana. *Hunter* v. *Cleveland, etc., R. Co.* (1930), 202 Ind. 328, 174 N. E. 287. When the Appellate Court has decided a case and filed a written opinion, it will be presumed that it has fully complied with the constitutional requirement and passed upon every substantial question presented by the record. *State ex rel. Sluss* v. *Appellate Court of Indiana* (1938), 214 Ind. 686, 17 N. E. (2d) 824. When this has been done and the unsuccessful party seeks a transfer to the Supreme Court on the ground that a new question of law is presented, or that a ruling precedent has been contravened, his petition will serve the same purpose that was served by an application for a writ of error at common law, and, at the same time, the appellate jurisdiction of this court will be fully protected. If, on the other hand, the Appellate Court should decide an appeal without passing upon all of the substantial questions presented by the record, a petition to transfer would not meet the requirements of an application for a writ of error, nor would it

present the undecided questions to this court for review. But it does not necessarily follow that the litigant would be left without a remedy. Where a self-executing constitutional right is violated, no statutory remedy is necessary for its protection. Under such circumstances it would become the duty of this court to supply the procedure. This might be done by exercising the original jurisdiction of this court to mandate the Appellate Court to pass upon the questions presented to it, as was sought to be done in the Sluss case, *supra*, or, this court might, in the exercise of its constitutional appellate jurisdiction, order the record of the case to be brought up from the Appellate Court for review by certiorari. *State ex rel. Daily* v. *Kime* (1937), 213 Ind. 1, 11 N. E. (2d) 140. The clerk of this court is, ex officio, clerk of the Appellate Court. § 4-228, Burns' 1933, § 1375, Baldwin's 1934. As such he has custody of the records in cases disposed of by the Appellate Court. It is not the policy of the law to require unnecessary things to be done, and no writ of certiorari or other formal proceedings are required to enable this court to gain access to such records. When a proper showing is made in and as a part of the petition to transfer that the Appellate Court has failed to consider and pass upon a substantial question duly presented to it, this court will examine the record, papers, and briefs in the same manner and to the same extent as if these had been brought up by a writ of error. The particularity with which such a showing should be made was suggested in the case of *State ex rel. Daily* v. *Kime, supra.* By this means the right of litigants to have their appeals fully and finally considered by the court of last resort will be amply protected.

It follows from what has been said that this appellant may not be denied his right to present his case to

this court for review because the Legislature has not provided a means for bringing it here.

But since the statutory procedure for transferring cases from that court to this was intended as a substitute for the writ of error in cases to which it was made applicable, there is no reason why this court cannot adopt and utilize that procedure in the case at bar. It would be less confusing to the courts and lawyers to permit this to be done than to undertake to establish a special procedure for such situations by rule of court. The name given to a proceeding for review is not controlling nor important; the substance of the right is the vital thing. To call a writ of error an appeal, or an application for certiorari a petition to transfer, does no violence to substantive rights. The appellant's petition to transfer, treated as performing the functions of a petition for a writ of error, is sufficient to present the case to us. It has been so considered and we have examined the record.

The record discloses that the appellant filed a claim before the Industrial Board which was heard by one member thereof, resulting in an award of compensation in his favor. There was an appeal to the full board and the case was reconsidered on the record of the evidence presented to the hearing member. Four members of the Industrial Board reversed the award and found for the defendant, the member who had first heard the case dissenting. At the original hearing a physician was asked a hypothetical question embracing certain assumed facts and calling for the opinion of the witness as to whether the accident described had anything to do with the plaintiff's alleged injury. The question was objected to because it "is an unreasonable assumption of facts and does not purport to state the facts in evidence and calls for a conclusion that this

member is obligated to decide under the law from all the evidence. It is an invasion of the province of the Hearing Member." The objection was overruled and the witness answered, "I would say no." The appellant here contends that the question was objectionable because it omitted certain pertinent and undisputed facts and because it assumed that certain facts embraced therein had been established when there was no evidence to that effect. On appeal to the Appellate Court it was held that if it be conceded that the question was objectionable for the reasons stated, that did not constitute reversible error because there was competent evidence in the record to support the finding of the full board. It has been long and consistently held by the Appellate Court that the admission of incompetent evidence before the Industrial Board will not cause a reversal of an award where it is supported by competent evidence. *John C. Groub Co.* v. *Brock* (1932), 94 Ind. App. 346, 180 N. E. 923; *Holliday* v. *National Malleable, etc., Co.* (1932), 95 Ind. App. 303, 183 N. E. 407; *Progress Laundry Co.* v. *Cook* (1935), 101 Ind. App. 235, 198 N. E. 807. This rule appears incompatible with the settled law applicable to courts that where evidence of an influential character is erroneously permitted to go to a jury, it will be presumed to have prejudiced the objecting party, unless the facts which the declaration tended to prove were established by uncontradicted evidence. *Indianapolis Railways, Inc.* v. *Waters* (1938), 213 Ind. 527, 12 N. E. (2d) 119.

The apparent inconsistency in the situation seems to arise out of the fact that while courts hold themselves bound by said so-called rules of evidence which long experience has demonstrated as being most trustworthy in arriving at the truth of factual controversies, administrative agencies have frequently

been relieved from observing these rules. It seems necessary to hold, under the circumstances, that when the administrative agency is authorized to conduct a hearing in a summary manner or without recourse to the technical rules of evidence, the order made pursuant to such inquiry may not be set aside because the rules applicable to court trials were not observed. *Consolidated Edison Co.* v. *National Labor Relations Board* (1938), 305 U. S. 197, 230, 59 S. Ct. 206, 83 L. Ed. 126. If courts should undertake to apply their rules of evidence in the review of administrative orders, the force of the statutes relieving such agencies from the obligation to observe such rules would be nullified. We can therefore subscribe to the abstract proposition that the admission of evidence which would be incompetent in a court proceeding will not alone justify a reviewing tribunal in holding an order of an administrative agency invalid.

This leads to a consideration of what is the province of a court when a review of an administrative order is sought. It must be conceded that it is the undoubted function of the court to determine the matter of jurisdiction, that is, the power of the administrative agency to decide the question which it has undertaken to decide. Jurisdiction is grounded upon constitutional or statutory authority, the existence of which is always a judicial question. All the other powers of the judiciary with respect to the review of administrative orders may be said to be embraced in the duty to determine if the requirements of due process have been met. The constitutional guaranty of due process is one of broad and comprehensive implications, not readily definable with precision. Among its elements are reasonable notice, an opportunity for a fair hearing, and the right to have a court of compe-

tent jurisdiction determine if the finding is supported by evidence.

The question of the sufficiency of the evidence to support an administrative order does not depend upon whether such evidence was received in conformity with the rules applicable to proceedings in courts; nor will the reviewing tribunal weigh conflicting evidence; enter into the field of determining the credibility of the witnesses; or consider an exercise of discretion, in the absence of a showing of an abuse thereof. These matters are the peculiar responsibility of the hearing agency. In the final analysis, the finding of an administrative agency will not be disturbed when it is subjected to the scrutiny of a judicial review, upon the claim that it is not supported by the evidence, unless it is made to appear that the finding does not rest upon a substantial factual foundation. This may be determined from a re-examination of the evidence upon which the administrative agency acted, or by the original reviewing court hearing evidence, depending upon the legislative scheme under which the agency operates. In the instant case the Compensation Act makes provision for preserving the evidence upon which the board acted and it is available for purposes of review.

In ascertaining whether the finding of the administrative agency meets the requirement of due process, the court will look to the substance rather than the form. The mode by which the facts were found will be regarded as a means rather than an end, and the finding will not be set aside because the agency did not conform to the court-made formulas of proof. If, however, it should be made to appear that the evidence upon which the agency acted was devoid of probative value; that the quantum of legitimate evidence was so proportionately meagre as to lead

to the conviction that the finding does not rest upon a rational basis; or that the result of the hearing must have been substantially influenced by improper considerations, the order will be set aside, not because incompetent evidence was admitted, but rather because the proof, taken as a whole, does not support the conclusion reached.

Applying what we believe to be the proper rules, we must hold that the appellant may not claim error on the circumstance that the hypothetical question which the medical witness was permitted to answer over objection as to which there was no evidence, nor can he be heard to complain because the full board reached a conclusion different from that of the hearing member on matters with respect to which the credibility of witnesses may have been the determining factor. The fact that the full board decided the case on a transcript of the evidence and reached a different conclusion than the hearing member, who had the witnesses before him, is unimportant here. The hearing before the full board is regarded as a hearing de novo. *McGuire* v. *Universal Gear Corp.* (1939), 106 Ind. App. 107, 18 N. E. (2d) 474. So far as this court is concerned there was but one hearing, which was before the full board, and we are called upon to review but one award which was likewise the award of the full board. We are not acquainted with any rule which would authorize us to carry our inquiry behind the award and the evidence upon which it was predicated. This reduces the inquiry to the single proposition: Is there such a showing that the award is not supported by evidence of probative value as will compel us to hold as a matter of law that the finding of the full board does not rest upon a foundation of fact?

The full Industrial Board found that the appellant's disability was not directly or indirectly due to any accidental injury arising out of and in the course of his employment with the appellee. There was evidence that on August 12, 1938, appellant was engaged in digging a ditch for the appellee. The ground was wet and appellant's right foot slipped off the shovel he was using, causing that part of the foot which is midway between the sole and the ankle to come into contact with the shovel. This occasioned pain at the time, but after a few minutes appellant resumed work. That evening he observed a red spot at the point of the alleged injury, but the skin was not broken. Next morning the foot was swollen and painful. The condition grew worse until the 18th when a physician was consulted. At the time of the hearing the foot was yet much swollen and appellant walked with a crutch and was unable to work. He testified he had not previously been troubled with his feet and had been in good health.

Three physicians testified as witnesses—one for the claimant and two for the defendant. Without taking into account the hypothetical question and answer heretofore referred to, there was evidence from which the board might have found that the appellant was suffering from neural syphilis which resulted in a typical Charcot joint of the right ankle coincidentally with the accident complained of, and that appellant's disability was due to said diseased condition rather than to the alleged injury. Appellant's only medical witness testified: "I am on the spot. I don't know whether the disease caused it (referring to the acute swelling that followed the accident) or the injury had anything to do about it and I don't think anybody could say exactly." Upon a consideration of the evidence, the

full Industrial Board found for the appellee and entered an award in its favor. In a judicial review of that proceeding the Appellate Court, exercising its original statutory jurisdiction, adjudged that the award was sustained by the evidence and that it was not contrary to law. In this we find no error.

The judgment of the Appellate Court of Indiana is therefore affirmed.

NOTE.—Reported in 26 N. E. (2d) 399.