CITY OF WASHINGTON *v.* BOGER.

[No. 19,483.  Filed August 10, 1961.]

*Robert O. Chambers* and *Seal & Seal,* both of Washington, for appellant.

*Jay O. Chapman,* of Washington, and *Wilbur F. Dassel,* of Evansville, for appellee.

MYERS, J.—This is an appeal from a judgment of the Daviess Circuit Court, setting aside an order of the Board of Public Works and Safety of the City of Washington, Indiana, hereinafter called the Board, which previously had dismissed appellee as a fireman of that city. The court ordered appellee to be reinstated and that he recover his back pay from the city.

Appellee had been employed as a fireman with the Washington Fire Department for a period of almost seventeen years. On June 22, 1959, there appeared in the Board's minute book, as of the same date, the following entry:

"Fire Chief, Joe Daily, reported to the Board of Works that a member of the Fire Department should be brought before the Board for a hearing on complaints that were filed against him by other members of the Fire Department."

On June 23, 1959, Chief Daily personally served a copy of a "notice" on appellee, which reads as follows:

"Othmar C. Frye
    "Mayor

"City of Washington, Indiana
    "June 23, 1959

"Fireman Lawrence Boger
"Fire Department
"City Hall
"Washington, Indiana

"NOTICE

"Fireman Lawrence Boger, you are hereby notified that a complaint has been filed with the Board of Public Works and Safety of the City of Washington, Indiana, against you alleging a violation of the rules of the Fire Department and charging you with conduct unbecoming an Officer.

"A hearing on this charge will be held by the Board of Public Works and Safety on June 26, 1959, at 3 o'clock P.M. in the Council Chambers of the Common Council of the City of Washington, City Hall, Washington, Indiana.

                    "BOARD OF PUBLIC WORKS
                    AND SAFETY
                "By /s/ Othmar C. Frye
                    "Othmar C. Frye, Pres.

"This is to certify that I have this day personally read the above notice on the said Fireman, Law-

rence Boger and delivered to him a true copy of said notice.

"/s/ Joseph F. Daily
"Jos. Daily, Chief, Fire Dept.

"Date June 23, 1959"

On June 26, 1959, there was a hearing before the Board, all members being present. Chief Daily, four other members of the Fire Department, and Mrs. Belle Smoot appeared as witnesses. At that time the charges asserted against appellee were read by the Mayor. They were in the form of a letter, which reads as follows:

"Washington Fire Department
"Washington, Indiana
"June 22, 1959

"To the Board of Public Works and Safety,
"Washington, Indiana
"Gentlemen:
"I wish to hereby file a complaint with the Board against a member of the Fire Department; namely, Lawrence Boger, for conduct unbecoming an officer, and ask the Board to set a date for a hearing.

"/s/ Joseph F. Daily
"Jos. Daily, Chief
"Washington Fire Department"

Appellee was not present at the hearing, having notified the Chief the day before that he would be unable to attend because of sickness. A doctor's written statement, dated June 24, 1959, confirmed this, saying that appellee was confined to his home for five or six days. At the conclusion of the hearing, the Mayor, who presided, announced that a decision would be reached within seven days.

On June 29, 1959, the Board held a special meeting on the matter of the charges against appellee. The pertinent part of the minutes of this meeting reads as follows:

"A review of the evidence heard on June 26 was made by the Board and a discussion had and it was found that the charges were true and that the said Lawrence Boger was guilty of conduct unbecoming an officer in that he wrongfully appropriated money from a cash box kept in the fire station and converted same to his personal use. The Board further finds the firemen present testified they indicated they did not want to work with Mr. Boger. The Board found that no additional evidence had been offered and that no action by the said Boger had been made to the Board to refute said charges or to continue said hearing or to offer other evidence and, therefore, it was moved, seconded and unanimously agreed that it is the order of the Board that said Fireman Lawrence Boger is discharged as a fireman of the City of Washington as of June 29, 1959, and that he shall receive his accumulated one week's vacation pay. The secretary of the Board is directed to serve a copy of this order on the said Lawrence Boger."

From this action of the Board, appellee took an "appeal" to the Circuit Court of Daviess County, pursuant to §48-6105, Burns' Ind. Stat., 1950 Replacement, by filing his complaint in four paragraphs, wherein he alleged the action of the Board was arbitrary, capricious and illegal. At the hearing before the court it was stipulated that all the evidence in the cause would consist of the transcript of the record of the proceedings before the Board and a portion of the minutes of the Board dated May 13, 1957, being general rules and regulations pertaining to disciplinary action against firemen and policemen. The court made certain findings of facts and entered judgment in favor of appellee, the pertinent parts of which are as follows:

"5. The hearing was held on June 26, 1959 according to the notice and that all members of the Board were present and that Joseph Daily, Fire Chief, Howard Riffey, fireman, Arthur Price, Assistant Chief, Mrs. Belle Smoot, Leslie Meade, Lieu-

tenant of the Fire Department, and Augustus Grannan, fireman, appeared as witness at the hearing.

"6. The Court further finds that no testimony was given at the hearing concerning Fireman Boger's lack of qualifications or fitness to perform his job or of his unwillingness to do so, nor has any evidence of any substantial merit been presented showing the violation by Boger of any of the rules and regulations as above set forth." [This refers to certain rules pertaining to disciplinary action previously adopted by the Board and in effect at the time, the pertinent parts of which are set forth hereafter in this opinion.]

"7. The Court further finds that Boger is a tenure employee under the laws of the State of Indiana.

"8. It is further found by the Court that three (3) days after the hearing, and on June 29, 1959, Boger was dismissed from his position on the Fire Department of the City.

"Upon this finding of fact, this Court finds that the law is with the plaintiff in his appeal to this Court from his dismissal, and that the Board of Public Works and Safety of the City of Washington, acted arbitrarily, capriciously and illegally in its dismissal of Lawrence Boger as an officer of the Fire Department of the City of Washington, Indiana. It is therefore considered ordered and adjudged by the Court that Lawrence Boger should be reinstated as a member of the Fire Department of the City of Washington, Indiana, and that he recover of and from the City of Washington, Indiana, all back pay due and owing him as a result of his dismissal, together with the court costs of this appeal."

Appellant filed a petition for rehearing in which it stated that the court erred in that the decision was not sustained by sufficient evidence and was contrary to law; in overruling appellant's motion to dismiss; in assuming to control the discretion of the Board; in substituting its judgment for that of the Board "when there was undisputed substantial evidence in the rec-

ord showing conduct of plaintiff which was unbecoming an officer"; in ordering full back pay without considering appellee's earnings during his suspension; and in that appellee did not demand a hearing before the Board.

The court overruled this petition and this appeal followed. The assignment of error is the overruling of appellant's petition for rehearing.

Appellant has joined its specifications of error, with the exception of the question as to back pay, which it does not argue at all, and thus is waived, into three main arguments. They are (1) that the decision of the court is not sustained by sufficient evidence; (2) that the decision is contrary to law; and (3) that the court erred in assuming to control the discretion of the Board.

As to argument number one, on the sufficiency of the evidence, we find it of no avail to appellant. The court reviewed only the record of the evidence presented to the Board. There was no trial *de novo*. The circuit court's decision held unlawful the action taken by the Board. The record on judicial review was based completely upon the Board's own record. This, in effect, was a decision against appellant, which had the burden of proof in the first place. Although seemingly an affirmative judgment in favor of appellee, as plaintiff, it actually amounted to a finding against appellant, as complaining party, in the proceedings before the Board. In so far as appellant is concerned, therefore, it results in a negative decision. Thus, appellant cannot successfully claim as error the insufficiency of the evidence which it produced. If it was entitled to relief under the evidence, and such relief was denied by the court, the decision is contrary to law. *Souerdike* v. *State* (1952), 231 Ind. 204, 108

N. E. 2d 136; Flanagan, Wiltrout and Hamilton, *Indiana Trial and Appellate Practice*, ch. 30, §1812, comment 6, page 88 (1959 Supp.), and cases cited.

In so far as the argument that the court assumed to control the discretion of the Board is concerned, this is a matter of law. This is also true concerning the other specifications of error set forth in the petition for rehearing. Consequently, this court will look at this matter solely on the basis of whether or not the decision of the court was contrary to law.

From the record of the hearing before the Board, we find evidence that there was a "cash box" which was kept on the second floor of this particular fire station in the City of Washington. It was an open cigar box containing loose change, apparently contributed by the firemen from time to time. The money was used to purchase coffee, milk, sugar, refreshments, newspapers, television repairs, and other such incidentals. The box was under no particular person's control, and was available at all times to the firemen in the station for their joint benefit while on duty. One of the firemen noticed that money was missing from the box in small amounts without explanation: 40 cents one day; 50 cents another day. He took it upon himself to mark every coin in the box with an "X" or the initials "WFD." He talked to a Mrs. Smoot who operated a grocery store across the street, where the men often came for purchases, and asked her to be on the lookout for these marked coins. A few days later she reported that she had received a marked quarter which had been given to her by appellee. She could not remember what he purchased.

At another time, appellee was going across the street to buy something at the store and one of the firemen asked him to bring back a pack of cigarettes. Appellee

returned with the cigarettes. The fireman gave him a dollar bill in payment. Appellee handed him three quarters in change. One of the quarters was marked.

When appellee was confronted with this by the other firemen, the testimony was that he had denied he had taken the money for himself, but claimed to have purchased sugar and butter with it. However, he offered to settle with them, and gave them $10, which they accepted. This last transaction took place on June 19, 1959. Subsequent thereto, appellee complained of feeling sick. The Chief gave him time off to visit a doctor, who ordered him to go home and stay in bed for five or six days. This was verified by the Chief, who talked to the doctor and asked him for a written statement concerning appellee's illness and how long he would be off. That statement arrived the date of the hearing.

None of the witnesses complained of appellee's work as a fireman. In fact, the Chief said he had done his work well recently. A fireman stated that appellee pitched in and did his work as well as any of them. However, it appears that it was exceptionally hard for the men to get along with him. Several of them reluctantly said that they could work with him. This fact overshadows the entire case.

The controlling statute herein, and the one under which these proceedings were instituted, is §48-6105, Burns' Ind. Stat., 1950 Replacement, *supra*. This grants tenure status to members of the fire and police forces until they shall have been removed by the proper Board or Commission. Grounds for removal are set forth as follows:

"They may be removed for any cause other than politics, after written notice is served upon such member in person or by copy left at his last and usual place of residence notifying him or her of

the time and place of hearing, and after an opportunity for a hearing is given, if demanded, and the written reasons for such removal shall be entered upon the records of such board. On the conviction in any court of a member of the said fire or police force, including police radio operators and police signal and fire alarm operators, of any criminal offense, or upon a finding and decision of the board that any such member has been or is guilty of neglect of duty, or of the violation of rules, or neglect or disobedience of orders, or of incapacity, or absence without leave, or immoral conduct, or conduct injurious to the public peace or welfare or conduct unbecoming an officer, or other breach of discipline, such commissioners shall have power to punish the offending party by reprimand, forfeiture, suspension without pay, dismissal, or by reducing him or her to a lower grade and pay."

The statute further provides for "appeal" to the circuit or superior courts in the county where the city is located by the party who has been dismissed or suspended, and sets forth the procedure to be followed therein. This so-called "appeal" has been held to be in the nature of a mandatory injunction. *Mills, Castor* v. *City of Winchester* (1959), 130 Ind. App. 397, 408, 162 N. E. 2d 97, 103, and cases cited. The purpose of the action is to determine the legality of the order made by the Board of Public Works and Safety.

It is well recognized that a court will not attempt to control the discretion of administrative boards or to substitute its judgment for theirs in matters within the realm of their delegated powers. However, when an administrative board has made an order which is claimed to be illegal, fraudulent, capricious or arbitrary, the court will entertain a suit to determine the legality of the order. In *City of Elkhart* v. *Minser* (1937), 211 Ind. 20, 26, 5 N. E.

2d 501, 503, the Supreme Court of Indiana stated as follows:

"However, when it is alleged in a complaint that such acts are illegal, capricious, fraudulent, or trespass upon the civil rights of the citizens of the state, the courts will not hesitate to take cognizance thereof in an action properly commenced. In so doing the court is exercising a purely judicial power, unmixed with the administrative branch of the state government."

In *Lloyd* v. *City of Gary* (1938), 214 Ind. 700, 703, 17 N. E. 2d 836, 838, the court stated the following:

"The Board of Public Works and Safety acts ministerially in determining the questions presented by the charges preferred. The court, on the so-called appeal, which it is noted is commenced by a complaint, acts judicially for the purpose of determining whether the ministerial board acted within it legal jurisdiction."

It must be noted that the statute specifically provides that "the written reasons for such removal shall be entered upon the records of such board." *City of Ft. Wayne* v. *Bishop* (1950), 228 Ind. 304, 92 N. E. 2d 544. The written reasons charged as entered upon the records of the Board did not even mention appellee's name, but merely stated that complaints had been filed against "a member of the Fire Department" by other members of the Department. This is not a sufficient charge. In *City of Ft. Wayne* v. *Bishop, supra,* the Supreme Court made the following statement (at page 310 of 228 Ind., at page 546 of 92 N. E. 2d):

"The charge made must be specific as to time, place, and the nature of the offense or offenses charged."

In that case a policewoman was charged with "neglect of duty" in a written statement entered upon the records of the Board. In holding that the action of the Board in dismissing her was arbitrary and capricious, the court said (at page 312 of 228 Ind., at page 547 of 92 N. E. 2d):

> "Since the statute which the appellant through its Board of Public Safety invoked in this case is both remedial and penal, it was the duty of the Board to bring its written charges clearly within the terms of the statute providing therefor. Appellee could be tried before the Board of Public Safety only upon 'the written reasons . . . entered upon the records of such board.' [*State ex rel. Felthoff* v. *Richards, supra,* page 644.] These reasons would have to be supported by some substantial evidence, but they could not be supplanted, enlarged or added to thereby. *To ascertain the charge or charges she had to meet appellee was required only to examine and meet the written reasons entered upon the records of the Board of Public Safety.* She should not be required to defend as to any charges other than those so entered in writing. An examination of the charges so entered in writing against appellee upon the records of such board fails to disclose anything said or done or omitted to be said or done by appellee that would justify either dismissal or discipline under the statute." (Our emphasis.)

Certainly, if appellee examined the written record of the Board pertaining to any charges against him, he would have found nothing specific as to himself or the time, place, and the nature of any offense.

Even if it may be considered that a charge of "conduct unbecoming an officer" was entered as a part of the records of the Board because of the Chief's letter of "complaint," there would be no difference in our results. Although it is one of the statutory grounds for removal, it is not defined therein. Standing alone, it is merely a conclusion. It is only

within the dictates of fairness and justice that a fireman or policeman, whose livelihood and reputation are at stake because of charges preferred against him, should know with clearness and certainty what he is charged with so that he can make his defense with knowledge and ability. Any charge must contain the essential facts and not conclusions. This requirement is more than a technicality; it is fundamental. Any substantial variance between the cause charged and the facts stated is fatal.

The Board on May 13, 1957, in adopting the rules and regulations pertaining to disciplinary action, attempted to explain "conduct unbecoming an officer." These rules were in existence at the time the events in this case took place, and the pertinent part reads as follows:

"2. h. Conduct unbecoming an officer—the following examples serve to illustrate what may be included under the provision.

"1. Drinking of intoxicating liquor while on duty or in uniform or becoming intoxicated.

"2. Use of vile and profane language.

"3. Any acts of oppression or tyranny toward any person or any acts of maliciousness toward any property.

"4. Repeated and unexcused failure to pay just debts and claims resulting in numerous creditors.

"5. Visiting business houses and homes while on duty or in uniform for other than police business; except for eating meals.

"6. Accepting or receiving favors under circumstances as to infer that the favors were bestowed with the expectation of receiving special treatment or favors in return.

"7. Reporting for work in an unkempt, unsavory or untidy manner.

"8. General rudeness and sarcasm and a lack of courtesy to all persons.

"9. Failure to keep secrets of the public learned in the operations of duty in strict confidence except where necessary for the proper performance of duty."

The record of the Board shows that appellee was found "guilty of conduct unbecoming an officer *in that he wrongfully appropriated money* from a cash box kept in the fire station *and converted same to his personal use.*" This is not one of the examples set forth in the rules and regulations. It is a charge of theft. At the beginning of the hearing, the Chief was asked the following question by the City Attorney and gave his answer:

"Chambers: Well, what's the nature of this complaint?
"Daily: Well, Petty Larceny or thievery."

This is a charge of a serious criminal offense, and not at all within the same category with the examples given in the rules. From the Chief's "complaint," appellee would have had no way of knowing that he was being charged with an unsavory misdemeanor in violation of the law. In *City of Ft. Wayne* v. *Bishop, supra,* the court made the following statement (at pages 313, 314 of 228 Ind., at page 548 of 92 N. E. 2d):

"Neither could the Board of Public Safety, agreeable with the statute under which it was acting, have a quasi Star Chamber session without a sufficient written charge against appellee duly entered upon its records, hear evidence and then adjudge appellee guilty of offenses with which she had not been charged."

We find the trial court committed no error in determining that the Board's action in dismissing appellee was capricious, arbitrary and illegal.

Appellant claims that the court erred in overruling its motion to dismiss. This is based on the contention that appellee did not demand a hearing, or request a continuance of the hearing, so that the court was deprived of jurisdiction in the matter. This is an erroneous interpretation of the law and is not supported by appellant's authorities. The statute does not require a hearing. It contemplates that a fireman may be removed, after charges are made, without a hearing, unless a hearing is demanded. *City of Michigan City* v. *State ex rel. Seidler* (1937), 211 Ind. 586, 592, 5 N. E. 2d 968. In spite of the fact that no hearing was demanded by appellee herein, the Board notified him that there would be one. Whether the notice was timely or reasonable, we do not consider, although there is a grave question as to whether the actual notice and the circumstances under which it was delivered, in connection with appellee's illness, could be deemed due process of law. The record recites that there was a hearing, and that as a result thereof the Board dismissed appellee. The statute gives appellee the *right* to appeal such a dismissal. It does not state that a demand by appellee for a hearing is a condition precedent to the right of appeal. Even if the statute were not so explicit, appellee would be entitled to have the order of the Board subjected to judicial review. *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N. E. 2d 399. Therefore, the court was not deprived of jurisdiction to hear and determine the legality of his dismissal because he did not demand a hearing.

Judgment affirmed.

Ryan, P. J., and Ax and Cooper, JJ., concur.

NOTE.—Reported in 176 N. E. 2d 484.